```
Stephen D. Finestone (125675)
John F. Sullivan (175236)
LAW OFFICES OF STEPHEN D. FINESTONE
456 Montgomery Street, 20th Floor
San Francisco, CA 94104
Telephone: (415) 421-2624
Facsimile:  (415) 398-2820
Email: sfinestone@pobox.com

Proposed Counsel for Debtor and Debtor in Possession
Nurserymen's Exchange, Inc.
```

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ) | Case No. 11- |
| ) | |
| NURSERYMEN'S EXCHANGE, INC. ) | Chapter 11 |
| ) | |
| Debtor and Debtor in Possession ) | **Date:** May __, 2011 |
| ) | **Time:** |
| ) | **Place:** 235 Pine Street, Courtroom 2_ |
| ) | San Francisco, CA |
| _____ ) | |

**DECLARATION OF ALEXANDER STEVENSON IN SUPPORT OF FIRST DAY MOTION TO APPROVE SALE PROCEDURES AND RELATED RELIEF**

I, Alexander Stevenson, declare as follows:

1. I am a Managing Director of FocalPoint Securities, LLC ("FocalPoint"). FocalPoint is the proposed investment banker to the Debtor, Nurserymen's Exchange, Inc. ("Debtor"). FocalPoint was retained by the Debtor in September 2010 to assist with efforts in connection with a possible sale, merger, acquisition, refinancing, reorganization, financial restructuring or recapitalization of Debtor, its businesses or assets, or any portion thereof, in a single or multiple transactions.

2. This declaration is submitted in support of Debtor's Motion for Order Approving Sale Procedures and related relief (the "Motion"). If called as a witness I could and would testify to the matters stated herein.

3. Beginning in September 2010, the Debtor and FocalPoint commenced two-part

STEVENSON DEC RE SALE PROCEDURES                          1

solicitation process designed to either (i) refinance the existing secured lender or (ii) find a financial or strategic buyer for the Debtor's operating business. On a parallel track to the process undertaken by FocalPoint, the Debtor has marketed certain real estate assets that are not essential to its operations. The assets employed in the Debtor's operating business (the "Operating Assets") include the following:

(i) Debtor's intellectual, real and personal property (including inventory and accounts receivable), licenses and leasehold interests in its operating business located at 2651 North Cabrillo Highway, Half Moon Bay, California 94109;

(ii) Debtor's plant brokerage business also located at 2651 North Cabrillo Highway, Half Moon Bay, California 94109; and

(iii) Certain executory contracts and real property leases and the potential assumption of certain of the Debtor's accounts payable

4. As a result of these efforts, Debtor and FocalPoint have contacted (or been contacted by) in excess of 150 potential interested parties, including both debt capital providers and strategic and financial buyers. Of these, approximately 48 have executed non-disclosure agreements and received additional information and access to the Debtor's on-line data room.

5. As a result of this process, the Debtor received a number of written proposals to provide working capital financing from financial institutions but these proposals did not provide enough capital to fully repay Wells Fargo Bank, Debtor's pre-petition secured lender (the "Secured Lender"), or were contingent on new equity being invested into the business. In addition to the proposals from lenders, the Company received several indications of interest to consummate a purchase of the Debtor's assets.

6. After evaluating these proposals, meeting with the various investor groups and consulting with the Pre-Petition Lender, the Company executed a Letter of Intent with a buyer that provided for a period of exclusivity and subsequently began engaging in extensive business and legal due diligence. Unfortunately, the Debtor was not able to finalize an asset purchase agreement with the interested party prior to filing the bankruptcy and exclusivity was terminated on or about May 11, 2011. Upon termination of exclusivity, FocalPoint immediately began re-marketing the Operating Assets and have begun conducting discussions with potential strategic and financial investors.

7. The Company, in consultation with its Board, its advisors and the Pre-Petition Lender

have determined in their reasonable business judgment that the appropriate way to ensure that the value of the Operating Assets is maximized and that its creditors obtain the best possible recovery is to conduct a sale of the Debtor's assets under Section 363 of the Bankruptcy Code. The Sale Procedures Motion (the "Sale Procedures") describes in detail the proposed process and timeline under which the Debtor, with the assistance of FocalPoint, will conduct the sale process to obtain the highest recovery possible for its creditors. As part of that process, the Debtor will reserve the right to select a "stalking horse bidder" and provide such bidder with bid protections in the form of breakup fee up to the amount described in the Sale Procedures. Specifically, the Debtor will only offer the stalking horse/breakup fee protections if, in doing so, the Debtor believes it will increase its chances of receiving the highest and best offer for the Operating Assets.

8. Based on my 16 years of experience as an investment banker and financial advisor to companies seeking to sell assets inside and outside of bankruptcy proceedings, and given the nature of Debtor's Operating Assets, the availability of post-petition financing, the Debtor's cash flows and the extensive process that was undertaken on a pre-petition basis I believe that the proposed Sale Procedures provide the best available framework for selling the Operating Assets. Moreover, for the reasons set forth in the Motion, I believe the Sale Procedures, including the potential selection of a stalking horse bidder and provision for a breakup fee, are fair and reasonable under the circumstances.

I, declare under penalty of perjury that the foregoing is true and correct. Executed this 22nd day of May 2011 at Los Angeles, California

          /s/ Alexander Stevenson
          Alexander Stevenson