Stephen D. Finestone (125675)
John F. Sullivan (175236)
LAW OFFICES OF STEPHEN D. FINESTONE
456 Montgomery Street, 20th Floor
San Francisco, CA 94104
Telephone: (415) 421-2624
Facsimile:  (415) 398-2820
Email: sfinestone@pobox.com

Proposed Counsel for Debtor and Debtor in Possession
Nurserymen's Exchange, Inc.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 11-31985 |
| NURSERYMEN'S EXCHANGE, INC. | Chapter 11 |
| Debtor and Debtor in Possession | **Date:** May 25, 2011<br>**Time:** 11:00 a.m.<br>**Place:** 235 Pine Street, Courtroom 2_<br>San Francisco, CA |

**MOTION OF DEBTOR AND DEBTOR IN POSSESSION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING (A) SECURED POSTPETITION FINANCING ON A SUPER PRIORITY BASIS PURSUANT TO 11 U.S.C. § 364, (B) USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND (C) GRANT OF ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 363 AND 364, AND (II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(c); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Debtor and Debtor in Possession, Nurserymen's Exchange, Inc. ("**Debtor**") in the above-captioned chapter 11 case (the "**Chapter 11 Case**"), files this motion (the "**Motion**") for entry of an interim order, substantially in the form attached hereto as **Exhibit A** (the "**Interim DIP Order**"), seeking to, among other things;

(i) obtain authorization for Debtor to obtain a senior secured super-priority revolving loan in the maximum principal amount of $5,000,000 (the "**DIP Financing**"), substantially on the terms and conditions set forth in the Interim DIP Order and that certain Credit and Security Agreement, dated as of

May 23, 2011, between Debtor and Wells Fargo Bank, National Association ("**Secured Lender**"), a copy of which is to the Proposed form of order granting the Motion (as amended, supplemented, or otherwise modified and in effect from time to time, the "**DIP Agreement**", and together with any and all related documents and agreements entered into in connection with or related to the DIP Financing, the "**DIP Loan Documents**");

    (ii) obtain authorization for Debtor to enter into the DIP Agreement and DIP Loan Documents and to perform such other and further acts as may be necessary or appropriate in connection with the DIP Loan Documents;

    (iii) grant the Secured Lender, subject only to the Carve-Out (as defined below) and the Avoiding Power Causes of Action (as defined below), super-priority administrative claim status pursuant to section 364(c)(1) of the United States Bankruptcy Code, 11 U.S.C. § 101, *et. seq*. (the "**Bankruptcy Code**"), in respect to all obligations under the DIP Financing;

    (iv) authorize Debtor to grant certain liens to Secured Lender limited as described below pursuant to section 364(d)(1) of the Bankruptcy Code (the "**DIP Liens**");

    (v) authorize Debtor to use the Secured Lender's cash collateral within the meaning of Bankruptcy Code section 363(a) (the "**Cash Collateral**") for the purposes described below, pursuant to Bankruptcy Code section 363(c);

    (vi) authorize Debtor to provide adequate protection, pursuant to the Bankruptcy Code sections 361, 362, 363(e) and 364(d), to the Secured Lender in the form of, among other things, the DIP Liens and a super-priority claim for DIP Financing, and adequate protection payments on the Pre-petition Secured Indebtedness (as defined below);

    (vii) schedule, pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedures (the "**Bankruptcy Rules**"), an interim hearing (the "**Interim Hearing**") on the Motion to consider entry of the Interim DIP Order for a period through and including the date of a final hearing on the Motion (the "**Final Hearing**"), to be used to fund operations and pay other administrative expenses pending the Final Hearing; and

    (viii) schedule, pursuant to Bankruptcy Rule 4001, a final hearing to consider entry of a final order (the "**Final Order**") authorizing Debtor, on a final basis, to borrow an amount up to the balance of

the DIP Financing.

In support of this Motion, Debtor, relying on the Declaration of Justin Dautoff in Support of the Debtor's Request for the First Day Relief (the "**First Day Declaration**") and the Declaration of Alexander Stevenson ("**Stevenson Declaration**"), filed contemporaneously herewith and incorporated herein by reference, further respectfully state as follows:

**Status of the Case and Jurisdiction**

1. On May 23, 2011 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2. Debtor continues to operate as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. No request has been made for the appointment of a trustee or examiner and a creditors' committee has not yet been appointed in this case.

4. This court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are sections 105, 361, 363, and 364(c) and 364(d) of the Bankruptcy Code, and Bankruptcy Rules 2002 and 4001.

**Background**

5. Founded in 1941 as a San Francisco bulb brokerage business, and currently based in Half Moon Bay in the San Francisco Bay Area, Debtor is a producer, broker and wholesaler of home decor products incorporating indoor blooming plants (miniature roses, sun stars, campanula), specialty foliage (miniature Christmas trees, bonsai, bamboo, cactus and succulents, etc.), holiday grow kits, and potted edibles. Debtor offers a broad range of unique, differentiated products known for their horticultural excellence and inspired design. Debtor's total revenue for fiscal year 2011 was approximately $51,170,000.

6. Debtor is a significant employer in Half Moon Bay, California. With approximately 165 employees, Debtor estimates it is the third largest employer in the city.

7. A detailed factual background of Debtor's businesses and operations, as well as the events precipitating the commencement of the Chapter 11 Case, is more fully set forth in the First Day Declaration.

**The DIP Financing**

    A.     The Pre-petition Secured Indebtedness

The Secured Lender and Debtor are parties to that certain Credit and Security Agreement dated as of August 15, 2008 (as it has been amended, restated, supplemented or otherwise modified from time to time, (the "**Pre-petition Credit Agreement**"), and all collateral and ancillary documents executed in connection therewith (the "**Pre-petition Secured Loan Documents**"), pursuant to which, among other things, the Secured Lender agreed, subject to the terms and conditions set forth in the Pre-petition Secured Loan Documents, to make certain loans and other financial accommodations to Debtor through a term loan facility (the "**Pre-petition Secured Term Indebtedness**") and a revolving loan facility (collectively with the Pre-petition Secured Term Indebtedness, the "**Pre-petition Secured Indebtedness**").

The Pre-petition Secured Indebtedness is secured by liens (the "**Pre-petition Liens**") on virtually all of Debtor's real and personal property assets (the "**Pre-petition Collateral**"). The principal amount of the Pre-petition Secured Indebtedness was approximately $15,490,150 as of the Petition Date, plus accrued and unpaid pre-petition interest, fees, expenses and other amounts chargeable under the Pre-petition Secured Loan Documents that may not have, as of the Petition Date been added to the amount due. In addition, Debtor is contingently liable to the Secured Lender on a posted letter of credit in the amount of $915,000, which liability is secured by the Pre-Petition Collateral. A copy of the Pre-petition Credit Agreement is available upon request from counsel for the Debtor. The DIP Agreement is attached to the proposed form of order granting the Motion. Unless otherwise specified, all capitalized terms used but not defined herein shall have the meanings given in the Interim DIP Order.

As evidenced by the First Day Declaration, in Debtor's opinion, the value of Debtor's assets far exceeds the amount of the Pre-petition Secured Indebtedness.

    B.     The Debtor's Financing Needs and Efforts to Obtain DIP Financing

MOTION RE DIP FINANCING      4

Case: 11-31985    Doc# 8    Filed: 05/23/11    Entered: 05/23/11 15:19:00    Page 4 of 15

As set forth more fully in the First Day Declaration and the Stevenson Declaration, Debtor has experienced a variety of external and internal events that have led to a decline in its business. Beginning in 2008, Debtor faced challenges resulting from a declining economy and industry overcapacity, which spurred the need to implement aggressive restructuring initiatives. Notwithstanding these challenges, Debtor implemented an aggressive crop plan that anticipated an economic recovery in 2010, which resulted in substantial overproduction and the operation of unproductive facilities during declining economy. Moreover, Debtor was obligated to grow and bring to market a pipeline of expensive orchids that ramped up going into the recession, with no ability to reduce production due to prior purchase orders with suppliers.

In order to gain financial stability and address its mounting debt issues, Debtor retained the services of a turnaround professional and an investment banking firm. In an attempt to restore operational and financial stability, Debtor implemented aggressive operational and restructuring initiatives that have positioned Debtor for more efficient, streamlined operations, greater responsiveness to customers' needs, and future growth in revenues and profitability.

Despite the vastly improved prospects created by Debtor's restructuring efforts, Debtor has determined that it is in the best interests of all of its stakeholders to sell its assets, including the Pre-petition Collateral, in a chapter 11 bankruptcy case. Debtor has already entered into an agreement with a Bay Area buyer to sell land not used in the operation of its business (but which serves as Pre-petition Collateral) for $8,000,000 (the "**PUD Sale**"). In addition, Debtor intends to sell its operating assets as a going concern within approximately ninety days of the Petition Date (the "**Operating Asset Sale**"). Debtor believes that proceeding under chapter 11 will maximize the value of Debtor's assets for all stakeholders and reduce potential risks, contingencies and uncertainties attendant to an internal restructuring or liquidation sale.

As described earlier, Debtor retained FocalPoint Securities, LLC ("**FocalPoint**"), to assist Debtor with raising new capital, restructuring its capital structure, and/or organizing and conducting the Operating Asset Sale. Together with its advisors, Debtor engaged in an expedited process of identifying potential financial and strategic sources of financing necessary for restructuring Debtor's balance sheet and/or ushering Debtor through the PUD Sale and the Operating Asset Sale and obtaining the requisite

debtor-in-possession financing. As set forth in the First Day Declaration and the Stevenson Declaration, Debtor and FocalPoint determined that it could not operate its business with the use of Cash Collateral alone. Given the short time frame and limited sources available in the current credit market, the only viable lender willing to lend on acceptable terms was the Secured Lender.

After substantial negotiations, Debtor and the Secured Lender reached an agreement pursuant to which the Secured Lender would extend the DIP Financing to fund Debtor's operations through a competitive sale process. The sale process and the normal operations of Debtor's business should result in the payment in full to the Secured Lender of the DIP Financing and the Pre-petition Secured Indebtedness (collectively, the "**Secured Indebtedness**"), with substantial additional proceeds available for Debtor's creditors and other stakeholders.

### C. The DIP Financing

The pertinent terms of the DIP Agreement and related Interim DIP Order are as follows:

- **Use of Loan Proceeds**: The DIP Financing may be used by Debtor as needed to fund operations pursuant to a projected budget prepared by Debtor (the "**Budget**") and consistent with the funding restrictions agreed to by Borrower and Secured Lender prior to bankruptcy. The funding restrictions relate to the amount of Borrower's "borrowing base," which includes its accounts receivables and inventory. In addition, no portion of the DIP Financing may be used to commence or prosecute any action or objection against the Secured Lender.

- **Termination Date**: Paragraph 7 of the Interim DIP Order provides that the DIP Agreement will automatically terminate upon the earliest to occur of: (i) 30 days after the Petition Date if a Final Order on terms acceptable to the Secured Lender is not entered by such date; (ii) August 5, 2011 (or such later date as the parties may agree); (iii) the effective date of a plan of reorganization; (iv) the closing of the PUD Sale and/or the Operating Asset Sale the proceeds of which will satisfy the Secured Indebtedness in full; and (v) an Event of Default as that term is defined in the DIP Agreement. In addition to the types of Events of Default that existed under the Pre-petition Credit Agreement (except where unenforceable under the Bankruptcy Code) these Events of Default include:

(i) Dismissal of the Chapter 11 Case.

(ii)     Appointment of a chapter 11 trustee or a responsible officer or examiner with enlarged powers.

(iii)    Entry of an order granting of relief from automatic stay to permit exercise of rights on behalf of any party with respect to a significant asset or assets.

(iv)    Entry of an order granting, or filing by Debtor of a motion seeking the granting of any priority claim that is senior or *pari passu* with the priority of the DIP Liens.

(v)     Entry of an order amending, supplementing, modifying, reversing, or vacating of, or filing by Debtor of a motion seeking the amendment, supplement, modification, reversing, or vacating of the Interim DIP Order or the Final Order.

(vi)    The cessation of DIP Liens or super-priority claim granted in the Interim DIP Order to be valid, perfected and enforceable in all respects.

(vii)   The Bankruptcy Court not having entered its order approving the sale procedures for the Operating Asset Sale on or before June 15, 2011 and its order approving the Operating Asset Sale and the PUD Sale on or before July 29, 2011.

- **Security**: Paragraph 8 of the Interim DIP Order provides that the Secured Lender is granted, as security for the repayment of the DIP Financing, pursuant to Sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, valid and perfected first in priority DIP Liens, subject only to prior secured indebtedness and other encumbrances in favor of creditors other than Secured Party who are senior to Secured Lender's rights under the Pre-petition Secured Loan Documents, on the same type of collateral as secures the Pre-petition Collateral, and all proceeds of the foregoing (the "**DIP Collateral**", and collectively with the Pre-petition Collateral, the "**Collateral**") excluding a lien in the Avoiding Power Causes of Action (as that term is defined below). Thus, the DIP Liens will be senior to the Pre-petition Liens but junior to any lien or encumbrance that was senior to the Pre-Petition Liens and is valid, enforceable and perfected.

- **Super-priority Claim**: Paragraph 10 of the Interim DIP Order provides that the Secured Lender is granted a super-priority administrative expense claim (the "**Super-priority Claim**") pursuant to the Bankruptcy Code section 364(c)(1) for the DIP Financing, having priority over any and all other administrative claims against Debtor, now existing or hereafter arising, of any kind whatsoever,

including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under Bankruptcy Code sections 105(a), 326, 328, 330, 331, 503(b), 506(c) (subject to entry of a Final Order) 507, 546(c), 726, 1113, and 1114 or otherwise; provided, that the Super-priority Claim will not be senior to the fees owed to certain governmental agencies and the Court pursuant to 28 USC § 1930 and would not be payable from the proceeds of any Avoiding Power Causes of Action.

- **Fees and Expense Reimbursement:** The DIP Agreement provides that, in addition to the same type of fees and expense reimbursement provided in the Pre-petition Secured Loan Documents, in consideration for providing the DIP Financing, the Secured Lender will be entitled to receive a fee of $50,000 upon entry of the Interim DIP Order.

- **Interest Rate**: The DIP Agreement provides for interest on the DIP Financing to be charged at the Prime Rate of Interest (as defined in the DIP Agreement) plus 3.5% per annum. A fee of .50% per annum will apply to the unused potion of the DIP Financing, payable monthly in arrears.

- **Application of Cash Collateral:** Proceeds of the Pre-petition Collateral will be applied to the Pre-petition Indebtedness (including accruing interest, fees, and the principal balance) until it is paid in full and proceeds of the DIP Collateral will be applied to the DIP Financing until it is paid in full. The Pre-petition Secured Indebtedness will remain secured only by the Pre-petition Collateral and will not be cross-collateralized by the Post-petition Collateral. Debtor will be responsible for identifying the nature of any Collateral as Pre-petition Collateral or DIP Collateral. In the event it cannot be readily determined, the proceeds will be deemed Pre-petition Collateral. Notwithstanding the application of the proceeds of the Pre-petition Collateral to the Pre-petition Secured Indebtedness, all rights to contest the extent, validity and priority of the Pre-petition Indebtedness and the Pre-petition Liens are preserved except as otherwise provided in the Interim DIP Order or the Final Order.

- **Remedies/Automatic Stay:** Paragraph 13 of the Interim DIP Order provides that upon the occurrence of an Event of Default (as that term is used in the DIP Agreement), the Secured Lender shall not be entitled to any immediate relief other than the cessation of advances but shall be entitled only to file a motion to be heard on an expedited basis for relief from the automatic stay to seek to enforce the DIP Liens and/or to exercise any other default-related remedies under the DIP Loan Documents, the Interim DIP Order or applicable law.

- **Adequate Protection:** Paragraphs 8 and 10 of the Interim DIP Order provide for adequate protection of the Secured Lender in the form of (i) the Super-Priority Claim and DIP Liens with respect to the DIP Financing, and (ii) adequate protection payments on the Pre-petition Secured Indebtedness (i.e. interest, fees and required principal reductions), each as more fully detailed in the Interim DIP Order.

- **506(c) Waiver:** Paragraph 14 of the Interim DIP Order provides that once the Secured Indebtedness has been paid in full, no costs or expenses of administration or other charge, lien, assessment or claim incurred at any time by any person or entity may be imposed against the Secured Lender or the Collateral under Section 506(c) of the Bankruptcy Code. This will allow Secured Lender, once and only if paid in full, to release its liens in all remaining Collateral so that it can be immediately available to Debtor's other creditors and stakeholders.

- **Carve-Out:** Paragraph 8 of the Interim DIP Order provides that the DIP Liens are subject only to pre-existing liens and encumbrances senior to Secured Lender's Pre-petition liens and the Carve-Out. Paragraph 18 of the Interim DIP Order defines "Carve-Out" as (i) the allowed and unpaid professional fees and disbursements incurred by the Debtor's estate, in an aggregate amount not in excess of $200,000; and (ii) the payment of fees pursuant to 28 U.S.C. § 1930. The Carve-Out is in addition to any retainers held and any other administrative claims provided for and paid pursuant to the Budget. Further, the Secured Lender has consented to the payment from the proceeds of the sale of its Collateral: (i) the transaction fees of FocalPoint due upon the closing of the Operating Asset Sale and of the real estate broker upon the closing of the PUD Sale; and (ii) payments due to Debtors' employees of provided for in Debtor's key employee incentive program as being payable from the proceeds of the Operating Asset Sale.

- **Claim Objection Waiver.** Paragraph 15 of the Interim DIP Order provides that any objection to the extent, validity, and priority of the Pre-petition Secured Indebtedness or the Pre-petition Liens must be filed on the earlier of: (a) sixty days from the date of selection of counsel for the Creditors' Committee (or if no Committee is appointed, 75 days from the Petition Date); and (b) payment in full of the Secured Indebtedness. Such a waiver also allows the Secured Lender, once

paid in full, to release its liens in all remaining Collateral so that it can be immediately available to Debtor's other creditors and stakeholders.

- **Additional Financing Waiver:** Although there is no waiver of Debtor's ability to seek to use Cash Collateral following termination of the DIP Financing for whatever reason, Paragraph 16 of the Interim DIP Order does contain a waiver of Debtor's right to seek secured financing from other than Secured Lender without the payment in full of the Secured Indebtedness.

If there is any conflict between the summary set forth herein and the DIP Loan Documents, the terms of the DIP Loan Documents will govern. If there is any conflict between the terms of the DIP Loan Documents and the proposed Interim DIP Order being submitted herewith, the terms of the Interim DIP Order will govern.

**LOCAL GUIDELINE DISCLOSURES**

Pursuant to this Court's Guidelines for Cash Collateral and Financing Motions & Stipulations (the "**Guidelines**"), a debtor in possession seeking authority to use cash collateral or obtain financing must disclose the presence and location of certain provisions contained in the documentation evidencing the cash collateral usage or financing. The debtor in possession must also justify the inclusion of such provisions. Set forth below are the disclosures required in accordance with the Guidelines. If a particular Guideline is not listed below, Debtor does not believe there is a disclosure or provision related to such Guideline.

**1)** **Granting of Priority or a Lien on Property of the Estate and a Carve-Out for Professional Fees:**

Paragraph 8 and 18 of the Interim DIP Order provides for a post-petition lien and security interest in the DIP Collateral under the DIP Loan Documents and the Interim DIP Order, subject to (i) pre-existing liens other than those held by Secured Lender; (ii) a "carve out" for professionals employed by the estate, with the carve out not to exceed $200,000; and, (iii) payment of fees owed to certain governmental agencies and the Court pursuant to 28 U.S.C. § 1930.

Paragraph 10 of the Interim DIP Order provides for the Superpriority Claim pursuant to Bankruptcy Code sections 364(b) and 364(c)(1), subject to the fees provided in 28 U.S.C. § 1930 and

exclusive of any proceeds of any avoiding causes of action under the Bankruptcy Code's avoiding powers (the "**Avoiding Power Causes of Action**").

    **2)    Providing Adequate Protection or Priority with Respect to a Pre-Petition Claim**

Paragraph 17 of the Interim DIP Order provides for payments to Secured Lender from proceeds of Pre-Petition Collateral on the Pre-Petition Secured Indebtedness when due, including payments on the Pre-petition Secured Term Indebtedness.

    **3.    Waivers of Rights Under Bankruptcy Code Section 506(c):**

Paragraph 14 of the Interim DIP Order provides that the estate waives its right to seek a surcharge of the Pre-petition Collateral under Section 506(c) upon satisfaction in full of the Secured Indebtedness.

    **4.    A Release, Waivers or Limitation of a Claim**

Paragraph 15 of the Interim DIP Order provides that the an objection to Secured Lender's Pre-Petition Indebtedness or liens in the Pre-petition Collateral must be made within the earlier of sixty days from selection of counsel for the Unsecured Creditor's Committee (or 75 days if no Committee is appointed) or payment in full of the Secured Indebtedness.

Paragraph 16 of the Interim DIP Order provides that Borrower waives its rights to seek authority to obtain post-petition loans or other financial accommodations under Bankruptcy Code section 364 secured by the Collateral unless such authority results in the Secured Indebtedness being paid in full.

    **5.    Relief From Stay Provisions**

Paragraph 13 of the Interim DIP Order provides that the Secured Lender may seek relief from stay on an expedited basis upon the occurrence of an Event of Default under the DIP Loan Documents.

    **6.    Application of Loan Proceeds:**

Paragraph 17 of the Interim DIP provides that the proceeds of all Pre-Petition Collateral shall be applied first to repay all outstanding Pre-Petition Secured Indebtedness until paid in full, and thereafter to pay any outstanding obligations under the DIP Financing.

**BASIS FOR RELIEF**

Section 364(c) of the Bankruptcy Code provides that:

> If the [debtor in possession] is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –
>
> (1) With priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of this title;
>
> (2) Secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3) Secured by a junior lien on property of the estate that is subject to a lien.

**Section 364(d)(1) of the Bankruptcy Code provides that:**

> The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if-
>
> (A) the trustee is unable to obtain such credit otherwise; and
>
> (B) There is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

**Bankruptcy Rule 4001(c)(2) provides, in relevant part, that:**

> The court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 14 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

**Bankruptcy Rule 4001(d) provides in relevant part, that**

> (i) a motion for approval to modify or terminate the automatic stay shall be served on any committee appointed pursuant to section 1102 of the Bankruptcy Code, on the creditors included on the list filed under Bankruptcy Rule 1007(d), and such other entities as the court may direct, and (ii) objections may be filed within 14 days of the mailing of the notice of the motion and the time for filing objections thereto.

**The DIP Financing**

With the assistance of FocalPoint and its other advisors, Debtor determined that use of Cash Collateral alone was insufficient to operate its business, negotiated the DIP Loan Documents at arm's-

length, and has determined, in the exercise of its business judgment, that the DIP Financing is the best proposal under the circumstances.

Provided that this judgment does not run afoul of the provisions of the Bankruptcy Code and its underlying policies, courts grant a debtor considerable deference in acting in accordance with its business judgment. *See, e.g., Bray v. Shenandoah Fed Say & Loan Ass'n (In re Snowshoe Co., Inc.)*, 789 F.2d 1085, 1088 (4th Cir, 1986); *In re Ames Dep't Stores, Inc* , 115 B.R, 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest"); *see also In re Curlew Valley Assocs*., 14 B,R, 506, 513-14 (Bankr. D, Utah 1981); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985)

The financing under the DIP Loan Documents provides liquidity to Debtor sufficient to enable it, among other things, to (a) minimize disruption and avoid immediate and irreparable harm to its business and operations, (b) preserve and maximize the value of the estate by conducting a sale process, and (c) to fund expenses incurred in connection with the Chapter 11 Case. Absent the financing provided for in the DIP Agreement, Debtor will not be able to meet all of its post-petition operating expenses, thereby preventing Debtor from being able to preserve the value of its assets and jeopardizing its ability to maximize estate value pursuant to an asset sale.

Debtor believes that the terms and conditions of the DIP Agreement are fair and reasonable under the circumstances. Accordingly, Debtor requests that the Secured Lender be afforded the benefits of section 364(e) of the Bankruptcy Code in respect of the DIP Loan Documents.

Based upon the foregoing, Debtor respectfully requests that the Court approve the DIP Financing in accordance with the terms set forth in the Interim DIP Order and the DIP Loan Documents.

**The Use of Cash Collateral Should Be Approved**

Under section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

Debtor requires the use of Cash Collateral to make the adequate protection payments to Secured Lender on account of the Pre-petition Secured Indebtedness.

Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used … or proposed to be used by the trustee, the court, … shall prohibit or condition such use … as is necessary to provide adequate protection of such interest" 11 U.S.C. § 363(e). Section 361 of the Bankruptcy Code delineates the forms of adequate protection, which include periodic cash payments, additional liens, replacement liens and other forms of relief. See 11 U.S.C. § 361. What constitutes adequate protection must be decided on a case-by-case basis, *See MN Bank Dallas*, *NA. v. O'Conner (In re O'Connor)*, 808 F.2d. 1393, 1396 (10th Cir. 1987); *Martin v. US. (In re Martin)*, 761 F.2d 472 (8th Cir. 1985). The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. See *In re Swedeland Dev. Group, Inc.*, 16 F. 3d 552, 564 (3d. Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.") (internal citations omitted)

The Secured Lender has agreed to the DIP Financing in consideration for the adequate protection provided to Secured Lender thereunder. Accordingly, the adequate protection proposed herein protect the Secured Lender's interest in the Pre-petition Collateral is fair and reasonable and sufficient to satisfy the requirements of Bankruptcy Code sections 363(c)(2) and (e).

**Interim Approval of the DIP Financing**

As set forth above, Bankruptcy Rules 4001(b)(2) and (c)(2) provide that a final hearing on a motion to obtain credit under section 364 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and to authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to debtor's estate.

Debtor respectfully requests that the Court schedule and conduct a preliminary hearing on Motion and authorize Debtor, from the entry of the Interim DIP Order until the Final Hearing, to obtain credit under the terms contained in the DIP Loan Documents.

**Establishing Notice Procedures and Scheduling Final Hearing**

Debtor respectfully requests that the Court schedule the Final Hearing and authorize it to mail and/or fax copies of the signed Interim DIP Order, which fixes the time, date and manner for the filing of objections, to (i) the Initial Notice Parties (as defined below); (ii) any party that has filed prior to such date a request for notices with this Court; (iii) counsel for any official committee; and (iv) the Securities and Exchange Commission. Debtor requests that the Court consider such notice of the Final Hearing, including without limitation, notice that Debtor will seek approval at the Final Hearing of a waiver of rights under section 506(c) of the Bankruptcy Code, to be sufficient notice under Bankruptcy Rule 4001.

**Notice to Parties:**

Pursuant to Bankruptcy Rules 4001(b) and (c), notice of this Motion and the Interim Hearing shall be provided by first class U.S. mail and/or fax to the following parties (the "**Initial Notice Parties**"): (a) the Office of the United States Trustee; (b) Debtor's twenty (20) largest unsecured creditors, as identified in its chapter 11 petition; (c) the Internal Revenue Service; (d) counsel to the Secured Lender, and (e) all known holders of pre-petition liens against the Debtor's property. Due to the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, Debtor respectfully submits that no further notice of this Motion is required.

**CONCLUSION**

Based on the above and the supporting declarations, Debtor respectfully requests that this Court enter the proposed Interim DIP Order, in substantially the form attached hereto as Exhibit A, and grant Debtor the relief requested herein along with such other relief as this Court deems just and proper.

Dated: May 23, 2011          LAW OFFICES OF STEPHEN D. FINESTONE

/s/ Stephen D. Finestone
Stephen D. Finestone
Attorney for Debtor

MOTION RE DIP FINANCING     15

Case: 11-31985    Doc# 8    Filed: 05/23/11    Entered: 05/23/11 15:19:00    Page 15 of 15