LANDAU GOTTFRIED & BERGER LLP
PETER J. GURFEIN (State Bar No. 127173)
PETER M. BRANSTEN (State Bar No. 113352)
MONICA RIEDER (State Bar No. 263250)
One Bush Street, Suite 600
San Francisco, CA 94104
Telephone: (415) 956-1630
Facsimile: (415) 399-9480
pgurfein@lgbfirm.com
pbransten@lgbfirm.com
mrieder@lgbfirm.com

Proposed Counsel for the Official Committee of Unsecured Creditors of
Nurserymen's Exchange, Inc.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| In re<br><br>NURSERYMEN'S EXCHANGE, INC.<br><br>        Debtor and Debtor in Possession. | Case No. 11-bk-31985-DM<br><br>Chapter 11<br><br>**Date:** June 9, 2011<br>**Time:** 1:00 p.m.<br>**Place:** 235 Pine Street<br>        Courtroom 22<br>        San Francisco, California |

**RESPONSE OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTOR'S MOTION FOR ORDER (A) APPROVING SALE PROCEDURES IN CONNECTION WITH THE PROPOSED SALE OF DEBTOR'S OPERATING ASSETS AT AUCTION (B) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN REAL PROPERTY AND PERSONAL PROPERTY LEASES AND EXECUTORY CONTRACTS IN CONNECTION THEREWITH (C) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") of Nurserymen's Exchange, Inc. (the "Debtor") hereby responds to the Debtor's *Motion for Order (A) Approving Sale Procedures in Connection with the Proposed Sale of Debtor's Operating Assets at Auction (B) Approving Procedures for the Assumption and Assignment of Certain Real Property and Personal Property Leases and Executory Contracts in Connection Therewith (C) Granting*

*Related Relief* (the "Sale Motion").

**A. <u>Introduction</u>**

The expedited timing of the Sale Motion has afforded the Committee and its counsel insufficient time to thoroughly assess the merits of the Sale Motion. In addition to the time constraints, the Committee does not yet have sufficient information from the Debtor to make a final determination on the proposed sale. The Committee is nevertheless willing to support the Debtor's Sale Motion at this time—subject to the conditions and limitations discussed herein—based on the Debtor's conviction that there is a real prospect that the Debtor can obtain bids for the operating assets that would provide a reasonable recovery for the estate and general unsecured creditors.

Accordingly, the Committee believes that the Debtor should be permitted to proceed with the bidding process, on the following conditions:

(a) the bidding process and any operating sale must be completed as quickly and efficiently as possible;[1]

(b) the Court should only approve stalking horse bid protections if the Committee and Wells Fargo Bank approve the stalking horse agreement and if the sale process permits an opportunity for the Debtor to use the stalking horse agreement to solicit additional bids;

(c) the Committee must be involved in reviewing, negotiating, and approving all bids, including any stalking horse bids, in "real time", as they are received by the Debtor and assessed by the Debtor's investment advisors;

(d) the Debtor must provide the Committee with the additional information necessary for the Committee to assess the merits of an operating sale and of any bids received; and

(e) the Committee reserves all of its rights regarding final approval of a sale of the operating assets.

The Committee has discussed these conditions with the Debtor, and the parties are in

---

[1] Specifically, the Committee would support a deadline of June 30, 2011, for bidders desiring to be selected as stalking horse to submit bids to the Debtor and for the Debtor, in consultation with and agreement by the Committee and Wells Fargo, to select a stalking horse bidder. Thereafter, overbids would be due by July 6, 2011, in order to qualify to participate in an auction. The auction among qualified bidders would take place on July 8, 2011. The sale hearing would be held on July 11, 2011.

tentative agreement regarding an acceptable bidding and sale procedure. The terms of that agreement are memorialized in a revised draft of the proposed order granting the Sale Motion, a copy of which is attached hereto as Exhibit "A."

### B. The Committee Cannot Yet Make a Final Determination Regarding the Merits of an Operating Sale

As noted above, the Debtor has not yet provided sufficient information for the Committee to determine whether the conclusion of an operating sale is in the best interests of the estate and general unsecured creditors. A sale of the Debtor's assets out of the ordinary course of business must be supported by an "articulated business justification," and whether such justification will be sufficient depends on the facts of the case. *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (9th Cir. BAP 1988) (quoting *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986)). If the court determines that a sale of the Debtor's assets is appropriate, "[t]he court's obligation . . . is to assure that optimal value is realized by the estate under the circumstances." *Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282, 288 (9th Cir. BAP 2005). Accordingly, the court (and the Committee, as a representative of the estate) must be persuaded both that a sale of the Debtor's assets is appropriate and that the specific sale procedure proposed will maximize the value of the Debtor's assets. In the present case, because of the additional administrative costs associated with operating the business, the Committee must be convinced that a sale of the Debtor as an operating company will yield a significant premium above the liquidation value of the Debtor's assets. Much will depend, therefore, upon the Committee's assessment of the adequacy of the offers received by the Debtors.

A number of issues, which the Committee has not had the opportunity to fully analyze, could affect the relative merits of an operating sale or a liquidation of the Debtor's assets (or, potentially, a restructuring of the Debtor). Those issues include: the Debtor's dispute with the United Farm Workers, the Debtor's potential liability under the WARN Act, the fact that certain of the Debtor's operations are located on land leased from the Debtor's insiders, the liquidation value of the Debtor's real property, the liquidation value of the Debtor's personal property, and the level of bids that will be obtained for the Debtor as a going concern. Prior to making a final

decision to support an operating sale of the Debtor's assets, the Committee would have to have more information relevant to these issues.

### C. The Committee Supports the Approval of Bidding Procedures, Subject to the Committee's Conditions

#### 1. Quick and Efficient Bidding and Sale Process

As stated above, the Committee has requested that the Debtor complete the bidding and sale process as quickly and efficiently as possible. The Committee's primary concern is that any value derived from a future sale of the Debtor's business will be offset by (a) the operating expenses that the Debtor anticipates incurring in the interim and (b) the expenses of administering the Debtor's Chapter 11 case. The Committee is also concerned that if the Debtor is unsuccessful in effectuating an operating sale of its assets, these expenditures will not have provided any benefit to the estate. Accordingly, the sale process should be conducted as quickly as possible to minimize the cash drain from the estate.

The revised schedule proposed by the Committee provides adequate time for the Debtor to attempt to effectuate a sale of its business while minimizing the inevitable cost of a sale effort. FocalPoint, LLC ("FocalPoint"), the Debtor's financial advisor, has been marketing the company since September 2010. According to FocalPoint's employment application, FocalPoint has contacted or been contacted by more than 150 potential interested parties, 48 of whom signed non-disclosure agreements to obtain additional information regarding the Debtor. The Debtor believes that all parties who might be seriously interested in bidding for the Debtor as an operating company are aware of the proposed sale. The Debtor has informed the Committee that many of these parties have already exchanged significant information with the Debtor and its professionals. The revised schedule provides enough time for the Debtor to conclude a sale if one of the interested parties genuinely desires to purchase the Debtor as an operating business.

#### 2. The Committee Supports the Requested Bid Protections Only For a Stalking Horse Bidder That Adds Value to the Auction Process

The Committee only supports the proposed stalking horse bid protections if the stalking horse adds value to the auction process by making an acceptable purchase offer that the Debtor

4

can use to solicit higher bids. As a general rule, an auction is the favored method of selling assets in a bankruptcy case, because it is considered likely to maximize the value received for the assets. *See, e.g., Sheen v. Diamond (In re American Computer & Digital Components)*, 2005 Bankr. LEXIS 3360 at *13 (9th Cir. BAP 2005) ("Frequently, the maximum value of estate property will be realized by competitive bidding."). Bankruptcy auction processes often include the selection of a stalking horse bidder and the provision of bid protections to that bidder. The rationale for approving bid protections for a stalking horse bidder is that

> the prospective buyer provides something of value to the estate in exchange, typically setting a floor under the auction by committing to purchase the assets at a minimum price. In addition, by conducting due diligence and negotiating a form of purchase agreement, the prospective buyer has set the stage for the auction and facilitated the trustee's sale of the assets.

3-363 Collier on Bankruptcy ¶ 363.02[6] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

The procedure originally proposed in the Sale Motion, which allowed the Debtor to select a 'stalking horse bidder' at any time, did not further this rationale. The Debtor could unilaterally choose to afford bid protections to a designated bidder, whether or not its bid actually fulfilled the function of creating a floor for other bids. Therefore, the 'stalking horse bidder' might have received compensation without enhancing the auction process or providing value to the estate.

The Debtor has now agreed to a process under which stalking horse benefits will only be awarded to a bidder who actually provides value to the bidding process. First, the stalking horse bid must be acceptable to both Wells Fargo and the Committee before it can approved. Second, the stalking horse agreement must be completed by June 30, giving the Debtor time to use that agreement as a basis for soliciting higher bids. With those changes to the procedure, the Committee supports the bid protections requested by the Debtor.

3. <u>The Committee Must Be Involved In All Stages of the Bidding and Sale Process</u>

The Committee must be involved in all stages of the bidding and sale process to fulfill its function of ensuring that the maximum value is recovered for the general unsecured creditors of the estate. That means that the Committee must be involved in reviewing, negotiating, and approving all bids, including any stalking horse bid, in "real time." The Debtor has agreed to

these conditions and will include the Committee in all of these procedures.

4. <u>The Debtor Must Provide the Committee With the Additional Information Needed for the Committee to Evaluate the Proposed Sale</u>

While the Debtor has already produced a significant amount of information to the Committee, the Committee requires additional information to evaluate any proposed operating sale of the Debtor's assets. The Committee has reviewed documents made available on a data room created by the Debtor's professionals, attended a presentation by FocalPoint, and conducted a site visit of the Debtor's facility in Half Moon Bay, California. However, the Committee still has a number of significant questions regarding the Debtor's assets, operations, and finances. At this point, the Committee believes that it can obtain the required information from the Debtor and its professionals on a consensual basis, as it has done to date.

5. <u>The Committee Reserves All Rights Regarding Final Approval of an Operating Sale</u>

Although the Committee supports the modified bidding process, for the reasons stated above, the Committee reserves all rights up to the time of the final sale hearing.

## **CONCLUSION**

For the reasons set forth above, the Committee respectfully requests that the Court enter an order granting the Sale Procedures Motion in substantially the form attached hereto as Exhibit "A".

Dated: June 8, 2011          LANDAU GOTTFRIED & BERGER LLP

By:   /s/ Peter M. Bransten
        Peter M. Bransten
Proposed Counsel for the Official Committee of Unsecured Creditors of Nurserymen's Exchange, Inc.

# EXHIBIT A

Stephen D. Finestone (125675)
John F. Sullivan (175236)
LAW OFFICES OF STEPHEN D. FINESTONE
456 Montgomery Street, 20th Floor
San Francisco, CA 94104
Telephone: (415) 421-2624
Facsimile:  (415) 398-2820
Email: sfinestone@pobox.com

Proposed Counsel for Debtor and Debtor in Possession
Nurserymen's Exchange, Inc.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re ) | Case No. 11-31985 |
| ) | |
| NURSERYMEN'S EXCHANGE, INC. ) | Chapter 11 |
| ) | |
| Debtor and Debtor in Possession ) | **Date:** May 25, 2011 |
| ) | **Time:** 11:00 a.m. |
| ) | **Place:** 235 Pine Street, Courtroom 2_ |
| ) | San Francisco, CA |
| ) | |

**APPROVED SALE PROCEDURES GOVERNING THE PROPOSED SALE OF DEBTOR'S OPERATING ASSETS AT AUCTION; FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN REAL PROPERTY AND PERSONAL PROPERTY LEASES AND EXECUTORY CONTRACTS IN CONNECTION THEREWITH**

Debtor and debtor in possession, Nurserymen's Exchange, Inc. ("Debtor"), is seeking to sell its operating business and substantially all of the assets used in connection therewith (the "Operating Assets"). As contemplated by and incorporated into that certain Order (A) Approving Sale Procedures, Including Break-Up Fee, In Connection With The Proposed Sale, (B) Approving Procedures For The Assumption And Assignment Of Real And Personal Property Leases And Executory Contracts In Connection therewith, (C) Approving Sale of the Operating Assets to The Highest and Best Bidder At Auction, and (D) Granting Related Relief (the "Sale Procedures Order"), the following procedures (the "Sale Procedures") shall be the exclusive mechanism governing such sale (the "Sale").

///

**A.     Due Diligence and Financial Wherewithal**

Any party that satisfies the following criteria in paragraphs 1 and 2 below in this Section A shall be permitted to conduct due diligence regarding the Operating Assets.

   **1. Due Diligence**

Upon execution and delivery of a confidentiality and nondisclosure agreement (in form and substance satisfactory to Debtor), which agreement must permit the disclosure of the bidder's identity to Wells Fargo Bank, N. A. ("Wells Fargo"), The Official Committee of Unsecured Creditors (the "Committee") by its counsel, Landau Gottfried & Berger, LLP, 18012 Century Park East, Suite 1460, Los Angeles, CA 90067, Attn: Peter Gurfein, to FocalPoint Securities, LLC ("FocalPoint") 11150 Santa Monica Blvd., Suite 1550, Los Angeles, California 90025, Attn.: Alexander Stevenson and Gayane Arabyan.

   a..    any party that wishes to conduct due diligence with respect to the Operating Assets may be granted access to all material information that has been or will be provided to other bidders; provided that, Debtor shall retain the ability to withhold trade secrets or other proprietary information from competitors, and

   b.    a potential purchaser shall be provided a form of asset purchase agreement (the "Form Agreement") relating to the Operating Assets, substantially in the form attached to these Sale Procedures.

   **2. Evidence of Financial Wherewithal**

Any party wishing to move forward must provide FocalPoint with sufficient information to demonstrate to Debtor and to the Committee that such party has the financial wherewithal and ability to consummate the transactions contemplated in the Form Agreement.

**B.     The Submission of Qualified Bids**

A bid that, in Debtor's reasonable business judgment, after consultation with the Committee, satisfies the following criteria in paragraphs 1 through 5 below in this Section B shall be a "Qualified Bid", and a bidder that submits a Qualified Bid shall be a "Qualified Bidder". Notwithstanding the foregoing, Wells Fargo, to the extent of the validity, priority and amount of its security interest, shall be deemed to be a Qualified Bidder pursuant to its rights to credit bid under section 363(k) of the

Bankruptcy Code, and any such credit bid of Wells Fargo shall be a Qualified Bid without the necessity of satisfying the criteria set forth in paragraphs 1 through 5 below in this Section B.

**1. Bid Deadline**

A Qualified Bid must be sent so as to be received by FocalPoint no later than 5:00 p.m. Pacific Daylight Time on Friday, July 6, 2011 (the "Bid Deadline").

**2. Format of a Qualified Bid**

A Qualified Bid must (1) be presented under a signed, irrevocable and binding contract, marked to show any modifications made to the Form Agreement, including the name of the bidder and other conforming changes that must be made to reflect the bidder and its Qualified Bid; (2) signed by an individual authorized to bind the bidder; (3) not be subject to obtaining financing, or future consent or approval, including, without limitation, consent of the bidder's board of directors (or similar governing body), due diligence, or the receipt of any consents, in each case, not otherwise required by the Form Agreement, or any other contingency (other than entry of an order approving the Sale); (4) fully disclose the identity of each entity that will be bidding for the Operating Assets or otherwise participating in connection with such Qualified Bid, and the complete terms of any such participation; and (5) state such bidder's offer is irrevocable and binding until the conclusion of the auction for the purchase of the Operating Assets pursuant to the Sales Procedures (the "Auction") and, if such bidder is the Winning Bidder or the Back-Up Bidder (each as defined below), until the closing of the sale of the Operating Assets.

**3. Deposit**

A Qualified Bid must provide for a deposit of five percent (5%) of the purchase price (inclusive of liabilities to be assumed) set forth in such bid (the "Deposit"), which shall, upon execution of the Qualified Bid be delivered either by a certified or bank check or by wire transfer of immediately available funds as a minimum good faith deposit and shall be used to fund a portion of the purchase price in the event that the bidder is the Winning Bidder.

**4. Financial Information**

A Qualified Bid must be accompanied by sufficient and adequate information to demonstrate to Debtor, after consultation with the Committee, that such bidder has the financial wherewithal and ability

to consummate the transactions contemplated in the Form Agreement, including evidence of adequate financing, a parent guaranty, or an irrevocable letter of credit, if deemed appropriate, each in a form agreed upon by Debtor, after consultation with the Committee. Such evidence shall include, but not be limited to, the most current audited and latest unaudited financial statements of the bidder or, if the bidder is an entity formed for the purpose of pursuing the Sale, financial statements of the equity holder(s) of the bidder and the written commitment of the equity holder(s) of the bidder to be financially responsible for the bidder's obligations in connection with the sale. If the bidder is unable to provide such information, Debtor, after consultation with the Committee, may accept other information sufficient to demonstrate that the bidder has the financial wherewithal to consummate the sale.

**5. Adequate Assurance**

A bidder must provide to the Debtor, FocalPoint, Wells Fargo and the Committee, prior to the Auction, a declaration attesting to such bidder's ability to provide adequate assurance of future performance with respect to any and all real property leases and other executory contracts (the "Executory Contracts") to be assumed and assigned by Debtor in connection with a sale of the Operating Assets.

**6. Rejection of Qualified Bids; Non-Conforming Bids**

Debtor, after consultation with the Committee, may reject any Qualified Bid not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Sale Procedures Order or these Sale Procedures; provided that, notwithstanding anything to the contrary therein, Debtor, after consultation with the Committee, shall have the right to accept as a Qualified Bid any non-conforming bid for the Operating Assets.

**7. Debtor's Option to Select a Stalking Horse Bidder**

On or before June 30, 2011, Debtor, after consultation with the Committee, may, but shall not be obligated to, designate one Qualified Bidder as a "Stalking Horse Bidder". Notice of selection of such Stalking Horse Bidder shall be promptly given to all Qualified Bidders and Wells Fargo and filed with the Court. Notwithstanding the foregoing, Debtor will only designate a Stalking Horse Bidder upon obtaining the agreement of Wells Fargo and the Creditor's Committee. In the event Debtor does

designate a Stalking Horse Bidder, it will provide notice of such designation to all Qualified Bidders within one business day of the designation.

**(a) Break-Up Fee**

Debtor may in its reasonable business judgment provide a selected Stalking Horse Bidder (if any) with customary and usual "stalking horse" protections, including a break-up fee and/or an expense reimbursement in an amount not to exceed in the aggregate three percent (3%) of the purchase price in the Qualified Bid of such Stalking Horse Bidder (the "Break-Up Fee"). Notwithstanding the foregoing, Debtor will only provide such stalking horse protections upon obtaining the agreement of Wells Fargo and the Creditor's Committee.

**(b) Overbids Prior To Auction and Bid Deadline:**

In the event that Debtor selects a Stalking Horse Bidder by June 30, 2011, then (i) the bid of each bidder, in order to be considered a Qualified Bid (the "Initial Overbid"), shall, in addition to meeting the other criteria set forth in these Sale Procedures, be in an amount that is sufficient to pay the Break-Up Fee and result in additional consideration to Debtor's estate in the minimum amount of $100,000, (such amount as determined pursuant to this clause the "Overbid Amount"), and (ii) if an Initial Overbid is made, each Qualified Bidder, including the Stalking Horse Bidder, shall have the right to submit a Qualified Bid; provided that any such increased Qualified Bid must (x) be greater than the Initial Overbid by no less than $50,000 (the "Incremental Bid"), and (y) be submitted so as to be received by FocalPoint, the Committee and Wells Fargo on or before the Bid Deadline.

**8. Notification Prior To Auction and Deadline to Participate**

Debtor, prior to the Auction, will inform in writing each Qualified Bidder of (i) the Qualified Bid that represents the highest or otherwise best offer for the Operating Assets as the starting bid at the Auction (the "Highest Pre-Auction Qualified Bid"); and (ii) the conditions (including the minimum overbid increment) for the submission at the Auction of a bid that would be higher and better than the Highest Pre-Auction Qualified Bid (a "Subsequent Qualified Overbid"). On or prior to **July 5, 2011 at 5:00 p.m. Pacific Daylight Time**, each Qualified Bidder shall inform FocalPoint of its intention to participate in the Auction.

**C.    The Auction**

Only Qualified Bidders will be permitted to attend and to participate at the Auction; provided, however, that nothing herein prohibits Wells Fargo from attending and participating in the Auction in their capacity as creditors of the estate, consistent with these Sale Procedures, and not as bidders. Qualified Bidders who wish to submit a Subsequent Qualified Overbid at the Auction must attend the Auction in person or through an authorized representative.

### 1. Auction Date And Time

The Auction shall be held on **July 8, 2011, commencing at 10:00 a.m. (Pacific Time)** at the offices of Gunderson Dettmer, 1200 Seaport Blvd., Redwood City, CA 94063, or at such other time, date and place as determined and announced by Debtor, after consultation with the Committee, for consideration of Subsequent Qualified Overbids with respect to the Operating Assets. The Auction may be adjourned as Debtor deems appropriate in the exercise of its reasonable business judgment. If the Auction is adjourned, reasonable notice of such adjournment and the time and place for the resumption of the Auction shall be given to all Qualified Bidders.

### 2. Failure to Receive Qualified Bids

If no Qualified Bid from a Qualified Bidder is received on or prior to the Bid Deadline for the Operating Assets, Debtor, after consultation with the Committee, may cancel the Auction.

### 3. No Collusion

Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the Operating Assets or the Auction.

### 4. Other Terms

Debtor, after consultation with the Committee, may make modifications to the Auction rules and these Sale Procedures, as may be determined to be in the best interests of Debtor's estate or creditors announced by Debtor from time to time prior to or during the Auction; provided that such modifications are not materially inconsistent with these Sale Procedures or the Sale Procedures Order.

**D. Selection of the Winning Bidder**

At the conclusion of the Auction, Debtor, after consultation with the Committee, shall determine which bid constitutes the highest and best offer for the Operating Assets (the "Winning Bid"), and the Qualified Bidder that has submitted a Winning Bid (the "Winning Bidder") shall execute and deliver to

Debtor its Form Agreement with any necessary modifications (the "Winning Purchase Agreement"). Notice of selection of such Winning Bidder shall be given promptly to any party known to have asserted a security interest or other interest in the Operating Assets, all counterparties to real estate leases or executory contracts to be assumed and assigned to such bidder or bidders, and any other party that requests to receive such notice on or before the hearing on this Motion, and filed with the Court at least 24 hours prior to the Sale Approval Hearing.

### E. The Sale Approval Hearing

A hearing to approve the Winning Bid (the "Sale Approval Hearing") shall be held before United States Bankruptcy Court for the Northern District of California (the "Court") on **July 11, 2011 at __:__ __.m.** (Pacific Time). Debtor shall timely file a motion seeking approval of the sale of the Operating Assets pursuant to Bankruptcy Code Section 363.

### F. Executory Contracts

**1. Notice to Counterparties**

As soon as reasonably practicable following the entry of the Sale Procedures Order, but in any event no later than June 25, 2011, Debtor shall provide notice to each counterparty to the Executory Contracts of Debtor's calculation of the amounts that must be paid in connection with the assumption and assignment of the Executory Contracts pursuant to section 365(b) of the Bankruptcy Code (the "Cure Amount"). As soon as practical before the Auction, Debtor will provide on a confidential basis to each counterparty to a Executory Contract designated for potential assumption and assignment with (i) the identity of each Qualified Bidder, and (ii) information regarding each Qualified Bidder's adequate assurance of future performance pursuant to section 365 of the Bankruptcy Code

**2. Objections**

If an objection is raised by a counterparty to any of the Executory Contracts solely with respect to the Cure Amount, and such dispute cannot be consensually resolved prior to the Sale Approval Hearing, Debtor may seek to assume such lease or contract and assign it to a Winning Bidder; provided that the entire disputed Cure Amount must be immediately paid upon such assumption and assignment, and Debtor must segregate the applicable disputed Cure Amount pending the resolution of such dispute by the Court or by agreement of the parties, for payment to the counterparty or refund to the Winning

Bidder. If an objection is raised by a counterparty to any of the Executory Contracts as to adequate assurance of future performance, and such dispute cannot be consensually resolved prior to the Sale Approval Hearing, said objection will be determined by the Court. Hearings on disputed Cure Amount(s) and/or adequate assurance of future performance in connection with the Executory Contracts (as applicable) shall be held (i) on the date of the Sale Approval Hearing, or (ii) on such other date as the Court may designate.

### 3. Motion to Assume and Assign:

Debtor shall file a motion to assume and assign the leases and executory contracts covered by this section such that the hearing on said motion will occur prior to the closing of the sale of the Operating Assets.

### G. Irrevocability of Certain Qualified Bids

Each Winning Bid shall remain open, irrevocable and binding upon each Winning Bidder; provided that no Winning Bid shall be binding upon Debtor until it has been approved by the Court. The bid of the next highest Qualified Bidder (the "Back-Up Bidder") at the highest price bid by such Qualified Bidder at the Auction, shall remain open and irrevocable and the Deposit of the Back Up Bidder shall be held in accordance with these Sale Procedures until the closing of the sale of the Operating Assets. The Deposits of all other Qualified Bidders will be returned to such Qualified Bidders no later than three (3) business days following the conclusion or cancellation of the Auction and the Deposit of the Back Up Bidder shall be returned to such Back Up Bidder no later than three (3) business days following the closing of the sale of the Operating Assets to the Winning Bidder.

### H. Failure to Close

Subject to the terms of the Winning Purchase Agreement, in the event a Winning Bidder (as determined by Debtor, after consultation with the Committee, and approved by the Court) fails to consummate the proposed transaction by the closing date contemplated in the Winning Purchase Agreement, (i) such Winning Bidder shall be deemed to have forfeited its Deposit and Debtor shall retain the Deposit and reserve the right to pursue all available remedies, whether legal or equitable, available to it, and (ii) Debtor shall be authorized without further order of the Court to consummate the proposed transaction with the Back-Up Bidder.

APPROVED SALE PROCEDURES                                8

Case: 11-31985    Doc# 70    Filed: 06/08/11    Entered: 06/08/11 22:49:19    Page 15 of 19
Exhibit A

I.  **Submission to Jurisdiction of the Court**

All bidders will be deemed to have submitted to the jurisdiction of the Court with respect to all matters related to the Auction or with respect to the purchase of the Operating Assets.

J.  **Expenses**

Subject to the terms of the Winning Purchase Agreement or any other executed agreement binding upon Debtor, all Qualified Bidders shall bear their own costs and expenses in connection with the Auction or with respect to the Operating Assets.

Dated: June 8, 2011                     LAW OFFICES OF STEPHEN D. FINESTONE

/s/ Stephen D. Finestone
Stephen D. Finestone
Attorney for Debtor

LANDAU GOTTFRIED & BERGER LLP
PETER J. GURFEIN (State Bar No. 127173)
PETER M. BRANSTEN (State Bar No. 113352)
MONICA R. RIEDER (State Bar No. 263250)
1801 Century Park East, Suite 1460
Los Angeles, California 90067
Telephone: (310) 557-0050
Facsimile: (310) 557-0056
pgurfein@lgbfirm.com
pbransten@lgbfirm.com
mrieder@lgbfirm.com

Proposed Counsel for the Official Committee of Unsecured Creditors of
Nurserymen's Exchange, Inc.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

NURSERYMEN'S EXCHANGE, INC.

    Debtor and Debtor in Possession.

Case No. 11-bk-31985

Chapter 11

**CERTIFICATE OF SERVICE**

**Date:** June 9, 2011
**Time:** 1:00 p.m.
**Place:** 235 Pine Street
    Courtroom 22
    San Francisco, California

    I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 1 Bush Street, Suite 600, San Francisco, California 94104. On June 8, 2011, I served the within document:

**RESPONSE OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTOR'S MOTION FOR ORDER (A) APPROVING SALE PROCEDURES IN CONNECTION WITH THE PROPOSED SALE OF DEBTOR'S OPERATING ASSETS AT AUCTION (B) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN REAL PROPERTY AND PERSONAL PROPERTY LEASES AND EXECUTORY CONTRACTS IN CONNECTION THEREWITH (C) GRANTING RELATED RELIEF**

in the following manners:

| | | |
|---|---|---|
| 1 | ☐ | **BY FACSIMILE** based upon court order or an agreement of the parties to accept service by facsimile, by transmitting via facsimile number (415) 399-9480 the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m. No error was reported by the fax machine utilized. *[A copy of the transmission confirmation report to be provided upon request and/or is attached hereto.]* |
| 5 | ☐ | **BY U.S. MAIL** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing an affidavit. |
| 10 | ☐ | **BY OVERNIGHT DELIVERY** by placing the document(s) listed above in a sealed overnight envelope and depositing it for overnight delivery at San Francisco, California, addressed as set forth below. I am readily familiar with the practice of this firm for collection and processing of correspondence for processing by overnight mail. Pursuant to this practice, correspondence would be deposited in the overnight box located 1 Bush Street, Suite 600, San Francisco, California 94104 in the ordinary course of business on the date of this declaration. |
| 14 | ☐ | **BY MESSENGER SERVICE** by providing the above listed document(s) addressed to the person(s) at the address(es) listed below to a professional messenger service for personal service. *[A declaration by the messenger service to be provided upon request and/or separately filed.]* |
| 17 | ☒ | **BY ELECTRONIC SERVICE** based upon court order or an agreement of the parties to accept service by electronic transmission, by electronically mailing the document(s) listed above to the e-mail address(es) set forth below, or as stated on the attached service list and/or by electronically notifying the parties set forth below that the document(s) listed above can be located and downloaded from the hyperlink provided. No error was received, within a reasonable time after the transmission, nor any electronic message or other indication that the transmission was unsuccessful. |

Debtor's Counsel
Stephen D. Finestone: sfinestone@pobox.com
John Sullivan: jfssf@hotmail.com

Counsel for Wells Fargo Bank, N.A.
Pamela Kohlman Webster: pwebster@buchalter.com
Robert Izimirian: rizmirian@buchalter.com

| | | |
|---|---|---|
| | ☒ | **BY CM/ECF NOTICE OF ELECTRONIC FILING** by causing such document(s) listed above to be served through this Court's electronic transmission facilities via the Notice of Electronic Filing (NEF) and hyperlink, to the parties and/or counsel who are determined this date to be registered CM/ECF Users set forth in the |

LANDAU GOTTFRIED
& BERGER LLP

2

service list obtained from this Court on the Electronic Mail Notice List.

- Stephen D. Finestone    sfinestone@pobox.com
- Philip J. Giacinti    pjg@procopio.com, caw@procopio.com
- Peter J. Gurfein    pgurfein@LGBFirm.com, cscott@lgbfirm.com
- Robert E. Izmirian    rizmirian@buchalter.com
- Ivan C. Jen    ivan@icjenlaw.com
- Brian Y. Lee    blee@pivotpointlaw.com
- Minnie Loo    minnie.loo@usdoj.gov
- Office of the U.S. Trustee / SF    USTPRegion17.SF.ECF@usdoj.gov, ltroxas@hotmail.com
- Pamela Kohlman Webster    pwebster@buchalter.com, ifs_filing@buchalter.com

On June 9, 2011, I served the within document:

**RESPONSE OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTOR'S MOTION FOR ORDER (A) APPROVING SALE PROCEDURES IN CONNECTION WITH THE PROPOSED SALE OF DEBTOR'S OPERATING ASSETS AT AUCTION (B) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN REAL PROPERTY AND PERSONAL PROPERTY LEASES AND EXECUTORY CONTRACTS IN CONNECTION THEREWITH (C) GRANTING RELATED RELIEF**

in the following manners:

☒ **BY PERSONAL SERVICE** by personally delivering the document(s) listed above to the person(s) at the address(es) listed below:

> Honorable Dennis Montali
> United States Bankruptcy Court
> San Francisco Division
> 235 Pine Street, 19th Floor
> San Francisco, CA 94104

> Office of the United States Trustee
> San Francisco Office
> 235 Pine Street, Suite 700
> San Francisco, CA 94104

I declare under penalty of perjury that the foregoing is true and correct. Executed at San Francisco, California on June 8, 2011.

By: __/s/Charlotte Hebert_____
    Charlotte Hebert

LANDAU GOTTFRIED & BERGER LLP

3