

1  Stephen D. Finestone (125675)
   John F. Sullivan (175236)
2  LAW OFFICES OF STEPHEN D. FINESTONE    Signed and Filed: June 10, 2011
   456 Montgomery Street, 20th Floor
3  San Francisco, CA 94104
   Telephone: (415) 421-2624
4  Facsimile: (415) 398-2820              _____
   Email: sfinestone@pobox.com             **DENNIS MONTALI**
5                                          **U.S. Bankruptcy Judge**
   Proposed Counsel for Debtor and Debtor in Possession
6  Nurserymen's Exchange, Inc.

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 11-31985 |
| NURSERYMEN'S EXCHANGE, INC. | Chapter 11 |
| Debtor and Debtor in Possession | **Date:** June 9, 2011<br>**Time:** 1:00 p.m.<br>**Place:** 235 Pine Street, Courtroom 2<br>San Francisco, CA |

**ORDER (A) APPROVING SALE PROCEDURES IN CONNECTION WITH THE PROPOSED SALE OF DEBTOR'S OPERATING ASSETS AT AUCTION (B) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN REAL PROPERTY AND PERSONAL PROPERTY LEASES AND EXECUTORY CONTRACTS IN CONNECTION THEREWITH (C) GRANTING RELATED RELIEF**

Upon consideration of the motion ("Motion") of Nurserymen's Exchange, Inc., debtor and debtor in possession herein ("Debtor"), pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for an Order (a) approving the proposed sale procedures, including a breakup fee, in the form attached as Exhibit A to this Order (the "Sale Procedures"), in connection with the proposed sale (the "Sale") at auction (the "Auction") of Debtor's operating business and substantially all of the assets used in connection therewith (the "Operating Assets") (b) approving the date of the Auction and date of the Sale Approval Hearing, and, (c) approving procedures for the assumption and assignment of real or personal property leases and

ORDER RE SALE PROCEDURES          1

executory contracts in connection with the Sale Procedures and the Auction; upon consideration of the pleadings submitted in support of the Motion; upon the record of the hearing held regarding the Motion; and sufficient cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

  A. This Court has jurisdiction over this matter and over the property of the Debtor and its bankruptcy estate pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).

  B. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.

  C. Proper, timely, adequate and sufficient notice of the Motion and proposed entry of this Order has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014 and no other or further notice of the Motion is required.

  D. Good cause has been shown for the entry of this Order. The Debtor has articulated good and sufficient reasons for approving the Sale Procedures in connection with the Auction of the Operating Assets, including (i) approval of the Sale Procedures, and (ii) granting the Debtor the authority, as set forth in the Sale Procedures, to provide a Stalking Horse Bidder with a Break-Up Fee.

  E. The Sale Procedures are fair and reasonable under the circumstances and, together with the marketing process commenced by the Debtor prior to the Petition Date and now being continued by FocalPoint Partners, LLC, provide an appropriate framework for selling the Debtor's assets and will enable the Debtor and the Official Committee of Unsecured Creditors (the "Committee"), to review, analyze and compare all bids received to determine whether any of the bids or any combination thereof would result in the highest and best value being realized for the Operating Assets.

  F. A Break-Up Fee not to exceed three percent (3%) of the purchase price (inclusive of liabilities to be assumed) to be paid to a Stalking Horse Bidder under the Sale Procedures is fair and reasonable under the circumstances. Specifically, Debtor may, in consultation with the Committee, determine to offer the Break-Up Fee and select a Stalking Horse Bidder if it has concluded that doing so

would increase the Debtor's chances of receiving the highest and best offer for the Operating Assets by establishing a bid standard or minimum for other bidders to the Auction, and serving as a catalyst for other potential or actual bidders, to the benefit of the Debtor's estate, its creditors, and all other parties in interest. Accordingly, a Break-Up Fee would be: (i) an actual and necessary cost and expense of preserving the Debtor's estate, within the meaning of section 503(b) of the Bankruptcy Code; (ii) commensurate to the real and substantial benefits conferred upon the Debtor's estate by any Stalking Horse Bidder; and (iii) reasonable and appropriate in light of the size and nature of the proposed sale of the Operating Assets.

G.  The procedures for the assumption and assignment of the Leases and other Executory Contracts are fair and reasonably necessary to expedite the closing of the Sale.

H.  A reasonable opportunity to object or to be heard regarding the relief requested in the Motion with respect to the Sale Procedures has been afforded to all interested parties and entities.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

1.  The Motion is granted as set forth herein.

2.  The sale of the Operating Assets shall be governed by the Sale Procedures attached as Exhibit A to this Order, which are hereby authorized and approved, including any Break-Up Fee

3.  Debtor is authorized to take all of the actions contemplated by the Sale Procedures, including conducting the Auction. Debtor or FocalPoint will provide information in a timely manner, and pursuant to the Sale Procedures, to the Committee and Wells Fargo with respect to: (i) the identify of bidders and any bids submitted; (ii) the selection of a stalking horse bidder, if any, and the terms of any stalking horse protections to be provided; (iii) the selection of the highest and best bid; (iv) any other decisions materially impacting the sale process.

4.  The Operating Assets may be sold in connection with the sale free and clear of any liens, interests or encumbrances, with any such liens, interests or encumbrances to attach to the proceeds of the sale in the same order, amount and priority as existed immediately prior to the Petition Date.

5.  In accordance with and subject to the Sale Procedures, the Bid Deadline for submitting bids shall be **July 6, 2011 at 3:00 p.m.**

6. In accordance with and subject to the Sale Procedures, the Auction shall be held on **July 8, 2011, commencing at 10:00 a.m.** at the offices of Gunderson Dettmer, 1200 Seaport Blvd., Redwood City, CA 94063, or at such other time, date and place as determined and announced by Debtor.

7. The assumption and assignment procedures for the Leases and Executory Contracts as set forth in the Sale Procedures are hereby expressly authorized.

8. The Court hereby schedules the Sale Approval Hearing to be held on **July 11, 2011 at 9:00 a.m. (Pacific Time)** before the Honorable Dennis Montali, United States Bankruptcy Judge, 235 Pine Street, 22nd Floor, San Francisco, CA 94104, to consider the entry of an order, inter alia, approving the sale of the Operating Assets free and clear of all liens, claims, interests and encumbrances.

10. No later than June 17, 2011 Debtor shall provide notice of the Sale Procedures, the time and place of the Auction, the time and place of the Sale Approval Hearing, and the deadline to file any objection to the Sale Approval Hearing, by sending the notice (by first class mail, postage prepaid) to (i) the Office of the United States Trustee; (ii) counsel to the Committee; (iii) Wells Fargo Bank, N.A. and its counsel, Buchalter Nemer; (iv) all federal, state, local regulatory or taxing authorities which have a reasonably known interest in the relief requested by the Motion; (v) the Internal Revenue Service; and all entities on the 2002 service list as of the date of entry of this order

11. As will be set forth in the notice of the hearing, objections to the sale of Operating Assets to the Winning Bidder shall be set forth in writing and shall specify with particularity the grounds for such objections and other statements of position and shall be filed with the Court at least one day before the date of the Sale Approval Hearing.

12. As soon as reasonably practicable following the entry of this Order, but in any event no later June 25, 2011, Debtor shall provide notice to each counterparty of the Leases and/or Executory Contracts of the Debtor's calculation of the amounts that must be paid in connection with the assumption and assignment of the Leases and/or Executory Contracts pursuant to section 365(b) of the Bankruptcy Code (the "Cure Amount").

13. As soon as is practical before the Auction date, Debtor shall provide on a confidential basis to each counterparty Lease and/or Executory Contract designated for potential assumption and assignment with (i) the identity of each Qualified Bidder, and (ii) information regarding each Qualified

Bidder's adequate assurance of future performance pursuant to section 365 of the Bankruptcy Code.

14. If an objection is raised by a counterparty to any of the Leases and/or Executory Contracts solely to the Cure Amount, and such dispute cannot be consensually resolved prior to the Sale Approval Hearing, the Debtor may seek to assume such lease or contract and assign it to a Winning Bidder; provided that the entire disputed Cure Amount must be immediately paid by the Winning Bidder upon such assumption and assignment, and Debtor must segregate the applicable disputed Cure Amount pending the resolution of such dispute by the Court or by agreement of the parties, for payment to the counterparty or refund to the Winning Bidder. If an objection is raised by a counterparty to any of the Leases and/or Executory Contracts as to adequate assurance of future performance, and such dispute cannot be consensually resolved prior to the Sale Approval Hearing, said objection will be determined by the Court. Hearings on disputed Cure Amount(s) and/or adequate assurance of future performance in connection with Leases and/or Executory Contracts (as applicable) shall be held (i) on the date of the Sale Approval Hearing, or (ii) on such other date as the Court may designate.

15. All Potential Bidders are deemed to have submitted to the jurisdiction of this Court with respect to all matters related to the Auction or the sale of the Operating Assets.

16. Notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) Debtor is not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and (iii) Debtor may, in its discretion and without further delay, take any action and perform any act authorized by this Order.

17. All objections to the Motion or the relief requested therein are overruled to the extent they have not been withdrawn, waived or otherwise resolved.

18. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

** END OF ORDER **

Stephen D. Finestone (125675)
John F. Sullivan (175236)
LAW OFFICES OF STEPHEN D. FINESTONE
456 Montgomery Street, 20th Floor
San Francisco, CA 94104
Telephone: (415) 421-2624
Facsimile:  (415) 398-2820
Email: sfinestone@pobox.com

Proposed Counsel for Debtor and Debtor in Possession
Nurserymen's Exchange, Inc.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 11-31985 |
| NURSERYMEN'S EXCHANGE, INC. | Chapter 11 |
| Debtor and Debtor in Possession | **Date:** May 25, 2011<br>**Time:** 11:00 a.m.<br>**Place:** 235 Pine Street, Courtroom 2<br>San Francisco, CA |

**APPROVED SALE PROCEDURES GOVERNING THE PROPOSED SALE OF DEBTOR'S OPERATING ASSETS AT AUCTION; FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN REAL PROPERTY AND PERSONAL PROPERTY LEASES AND EXECUTORY CONTRACTS IN CONNECTION THEREWITH**

Debtor and debtor in possession, Nurserymen's Exchange, Inc. ("Debtor"), is seeking to sell its operating business and substantially all of the assets used in connection therewith (the "Operating Assets").  As contemplated by and incorporated into that certain Order (A) Approving Sale Procedures, Including Break-Up Fee, In Connection With The Proposed Sale, (B) Approving Procedures For The Assumption And Assignment Of Real And Personal Property Leases And Executory Contracts In Connection therewith, (C) Approving Sale of the Operating Assets to The Highest and Best Bidder At Auction, and (D) Granting Related Relief (the "Sale Procedures Order"), the following procedures (the "Sale Procedures") shall be the exclusive mechanism governing such sale (the "Sale").

///

APPROVED SALE PROCEDURES 1

**A.     Due Diligence and Financial Wherewithal**

Any party that satisfies the following criteria in paragraphs 1 and 2 below in this Section A shall be permitted to conduct due diligence regarding the Operating Assets.

**1. Due Diligence**

Upon execution and delivery of a confidentiality and nondisclosure agreement (in form and substance satisfactory to Debtor), which agreement must permit the disclosure of the bidder's identity to Wells Fargo Bank, N. A. ("Wells Fargo"), The Official Committee of Unsecured Creditors (the "Committee") by its counsel, Landau Gottfried & Berger, LLP, 18012 Century Park East, Suite 1460, Los Angeles, CA 90067, Attn: Peter Gurfein, to FocalPoint Securities, LLC ("FocalPoint") 11150 Santa Monica Blvd., Suite 1550, Los Angeles, California 90025, Attn.: Alexander Stevenson and Gayane Arabyan.

    a..     any party that wishes to conduct due diligence with respect to the Operating Assets may be granted access to all material information that has been or will be provided to other bidders; provided that, Debtor shall retain the ability to withhold trade secrets or other proprietary information from competitors, and

    b.     a potential purchaser shall be provided a form of asset purchase agreement (the "Form Agreement") relating to the Operating Assets, substantially in the form attached to these Sale Procedures.

**2. Evidence of Financial Wherewithal**

Any party wishing to move forward must provide FocalPoint with sufficient information to demonstrate to Debtor and to the Committee that such party has the financial wherewithal and ability to consummate the transactions contemplated in the Form Agreement.

**B.     The Submission of Qualified Bids**

A bid that, in Debtor's reasonable business judgment, after consultation with the Committee, satisfies the following criteria in paragraphs 1 through 5 below in this Section B shall be a "Qualified Bid", and a bidder that submits a Qualified Bid shall be a "Qualified Bidder". Notwithstanding the foregoing, Wells Fargo, to the extent of the validity, priority and amount of its security interest, shall be deemed to be a Qualified Bidder pursuant to its rights to credit bid under section 363(k) of the

Bankruptcy Code, and any such credit bid of Wells Fargo shall be a Qualified Bid without the necessity of satisfying the criteria set forth in paragraphs 1 through 5 below in this Section B.

**1. Bid Deadline**

A Qualified Bid must be sent so as to be received by FocalPoint no later than 5:00 p.m. Pacific Daylight Time on July 6, 2011 (the "Bid Deadline").

**2. Format of a Qualified Bid**

A Qualified Bid must (1) be presented under a signed, irrevocable and binding contract, marked to show any modifications made to the Form Agreement, including the name of the bidder and other conforming changes that must be made to reflect the bidder and its Qualified Bid; (2) signed by an individual authorized to bind the bidder; (3) not be subject to obtaining financing, or future consent or approval, including, without limitation, consent of the bidder's board of directors (or similar governing body), due diligence, or the receipt of any consents, in each case, not otherwise required by the Form Agreement, or any other contingency (other than entry of an order approving the Sale); (4) fully disclose the identity of each entity that will be bidding for the Operating Assets or otherwise participating in connection with such Qualified Bid, and the complete terms of any such participation; and (5) state such bidder's offer is irrevocable and binding until the conclusion of the auction for the purchase of the Operating Assets pursuant to the Sales Procedures (the "Auction") and, if such bidder is the Winning Bidder or the Back-Up Bidder (each as defined below), until the closing of the sale of the Operating Assets.

**3. Deposit**

A Qualified Bid must provide for a deposit of five percent (5%) of the purchase price (inclusive of liabilities to be assumed) set forth in such bid (the "Deposit"), which shall, upon execution of the Qualified Bid be delivered either by a certified or bank check or by wire transfer of immediately available funds as a minimum good faith deposit and shall be used to fund a portion of the purchase price in the event that the bidder is the Winning Bidder.

**4. Financial Information**

A Qualified Bid must be accompanied by sufficient and adequate information to demonstrate to Debtor, after consultation with the Committee, that such bidder has the financial wherewithal and ability

to consummate the transactions contemplated in the Form Agreement, including evidence of adequate financing, a parent guaranty, or an irrevocable letter of credit, if deemed appropriate, each in a form agreed upon by Debtor, after consultation with the Committee. Such evidence shall include, but not be limited to, the most current audited and latest unaudited financial statements of the bidder or, if the bidder is an entity formed for the purpose of pursuing the Sale, financial statements of the equity holder(s) of the bidder and the written commitment of the equity holder(s) of the bidder to be financially responsible for the bidder's obligations in connection with the sale. If the bidder is unable to provide such information, Debtor, after consultation with the Committee, may accept other information sufficient to demonstrate that the bidder has the financial wherewithal to consummate the sale.

**5. Adequate Assurance**

A bidder must provide to the Debtor, FocalPoint, Wells Fargo and the Committee, prior to the Auction, a declaration attesting to such bidder's ability to provide adequate assurance of future performance with respect to any and all real property leases and other executory contracts (the "Executory Contracts") to be assumed and assigned by Debtor in connection with a sale of the Operating Assets.

**6. Rejection of Qualified Bids; Non-Conforming Bids**

Debtor, after consultation with the Committee, may reject any Qualified Bid not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Sale Procedures Order or these Sale Procedures; provided that, notwithstanding anything to the contrary therein, Debtor, after consultation with the Committee, shall have the right to accept as a Qualified Bid any non-conforming bid for the Operating Assets.

**7. Debtor's Option to Select a Stalking Horse Bidder**

On or before June 30, 2011, Debtor, after consultation with the Committee, may, but shall not be obligated to, designate one Qualified Bidder as a "Stalking Horse Bidder". Notice of selection of such Stalking Horse Bidder shall be promptly given to all Qualified Bidders and Wells Fargo and filed with the Court. Notwithstanding the foregoing, Debtor will only designate a Stalking Horse Bidder upon obtaining the agreement of Wells Fargo and the Creditor's Committee. In the event Debtor does

designate a Stalking Horse Bidder, it will provide notice of such designation to all Qualified Bidders within one business day of the designation.

**(a) Break-Up Fee**

Debtor may in its reasonable business judgment provide a selected Stalking Horse Bidder (if any) with customary and usual "stalking horse" protections, including a break-up fee and/or an expense reimbursement in an amount not to exceed in the aggregate three percent (3%) of the purchase price in the Qualified Bid of such Stalking Horse Bidder (the "Break-Up Fee"). Notwithstanding the foregoing, Debtor will only provide such stalking horse protections upon obtaining the agreement of Wells Fargo and the Creditor's Committee.

**(b) Overbids Prior To Auction and Bid Deadline:**

In the event that Debtor selects a Stalking Horse Bidder by June 30, 2011, then (i) the bid of each bidder, in order to be considered a Qualified Bid (the "Initial Overbid"), shall, in addition to meeting the other criteria set forth in these Sale Procedures, be in an amount that is sufficient to pay the Break-Up Fee and result in additional consideration to Debtor's estate in the minimum amount of $100,000, (such amount as determined pursuant to this clause the "Overbid Amount"), and (ii) if an Initial Overbid is made, each Qualified Bidder, including the Stalking Horse Bidder, shall have the right to submit a Qualified Bid; provided that any such increased Qualified Bid must (x) be greater than the Initial Overbid by no less than $50,000 (the "Incremental Bid"), and (y) be submitted so as to be received by FocalPoint, the Committee and Wells Fargo on or before the Bid Deadline.

**8. Notification Prior To Auction and Deadline to Participate**

Debtor, prior to the Auction, will inform in writing each Qualified Bidder of (i) the Qualified Bid that represents the highest or otherwise best offer for the Operating Assets as the starting bid at the Auction (the "Highest Pre-Auction Qualified Bid"); and (ii) the conditions (including the minimum overbid increment) for the submission at the Auction of a bid that would be higher and better than the Highest Pre-Auction Qualified Bid (a "Subsequent Qualified Overbid"). On or prior to **July 5, 2011 at 5:00 p.m. Pacific Daylight Time**, each Qualified Bidder shall inform FocalPoint of its intention to participate in the Auction.

///

## C. The Auction

Only Qualified Bidders will be permitted to attend and to participate at the Auction; provided, however, that nothing herein prohibits Wells Fargo from attending and participating in the Auction in their capacity as creditors of the estate, consistent with these Sale Procedures, and not as bidders. Qualified Bidders who wish to submit a Subsequent Qualified Overbid at the Auction must attend the Auction in person or through an authorized representative.

### 1. Auction Date And Time

The Auction shall be held on **July 8, 2011, commencing at 10:00 a.m. (Pacific Time)** at the offices of Gunderson Dettmer, 1200 Seaport Blvd., Redwood City, CA 94063, or at such other time, date and place as determined and announced by Debtor, after consultation with the Committee, for consideration of Subsequent Qualified Overbids with respect to the Operating Assets. The Auction may be adjourned as Debtor deems appropriate in the exercise of its reasonable business judgment. If the Auction is adjourned, reasonable notice of such adjournment and the time and place for the resumption of the Auction shall be given to all Qualified Bidders.

### 2. Failure to Receive Qualified Bids

If no Qualified Bid from a Qualified Bidder is received on or prior to the Bid Deadline for the Operating Assets, Debtor, after consultation with the Committee, may cancel the Auction.

### 3. No Collusion

Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the Operating Assets or the Auction.

### 4. Other Terms

Debtor, after consultation with the Committee, may make modifications to the Auction rules and these Sale Procedures, as may be determined to be in the best interests of Debtor's estate or creditors announced by Debtor from time to time prior to or during the Auction; provided that such modifications are not materially inconsistent with these Sale Procedures or the Sale Procedures Order.

## D. Selection of the Winning Bidder

At the conclusion of the Auction, Debtor, after consultation with the Committee, shall determine which bid constitutes the highest and best offer for the Operating Assets (the "Winning Bid"), and the

Qualified Bidder that has submitted a Winning Bid (the "Winning Bidder") shall execute and deliver to Debtor its Form Agreement with any necessary modifications (the "Winning Purchase Agreement"). Notice of selection of such Winning Bidder shall be given promptly to any party known to have asserted a security interest or other interest in the Operating Assets, all counterparties to real estate leases or executory contracts to be assumed and assigned to such bidder or bidders, and any other party that requests to receive such notice on or before the hearing on this Motion, and filed with the Court at least 24 hours prior to the Sale Approval Hearing.

**E.     The Sale Approval Hearing**

A hearing to approve the Winning Bid (the "Sale Approval Hearing") shall be held before United States Bankruptcy Court for the Northern District of California (the "Court") on **July 11, 2011 at 9:00 a.m.** (Pacific Time). Debtor shall timely file a motion seeking approval of the sale of the Operating Assets pursuant to Bankruptcy Code Section 363.

**F.     Executory Contracts**

**1. Notice to Counterparties**

As soon as reasonably practicable following the entry of the Sale Procedures Order, but in any event no later than June 25, 2011, Debtor shall provide notice to each counterparty to the Executory Contracts of Debtor's calculation of the amounts that must be paid in connection with the assumption and assignment of the Executory Contracts pursuant to section 365(b) of the Bankruptcy Code (the "Cure Amount"). As soon as practical before the Auction, Debtor will provide on a confidential basis to each counterparty to a Executory Contract designated for potential assumption and assignment with (i) the identity of each Qualified Bidder, and (ii) information regarding each Qualified Bidder's adequate assurance of future performance pursuant to section 365 of the Bankruptcy Code

**2. Objections**

If an objection is raised by a counterparty to any of the Executory Contracts solely with respect to the Cure Amount, and such dispute cannot be consensually resolved prior to the Sale Approval Hearing, Debtor may seek to assume such lease or contract and assign it to a Winning Bidder; provided that the entire disputed Cure Amount must be immediately paid upon such assumption and assignment, and Debtor must segregate the applicable disputed Cure Amount pending the resolution of such dispute by

the Court or by agreement of the parties, for payment to the counterparty or refund to the Winning Bidder. If an objection is raised by a counterparty to any of the Executory Contracts as to adequate assurance of future performance, and such dispute cannot be consensually resolved prior to the Sale Approval Hearing, said objection will be determined by the Court. Hearings on disputed Cure Amount(s) and/or adequate assurance of future performance in connection with the Executory Contracts (as applicable) shall be held (i) on the date of the Sale Approval Hearing, or (ii) on such other date as the Court may designate.

### 3. Motion to Assume and Assign:

Debtor shall file a motion to assume and assign the leases and executory contracts covered by this section such that the hearing on said motion will occur prior to the closing of the sale of the Operating Assets.

**G. Irrevocability of Certain Qualified Bids**

Each Winning Bid shall remain open, irrevocable and binding upon each Winning Bidder; provided that no Winning Bid shall be binding upon Debtor until it has been approved by the Court. The bid of the next highest Qualified Bidder (the "Back-Up Bidder") at the highest price bid by such Qualified Bidder at the Auction, shall remain open and irrevocable and the Deposit of the Back Up Bidder shall be held in accordance with these Sale Procedures until the closing of the sale of the Operating Assets. The Deposits of all other Qualified Bidders will be returned to such Qualified Bidders no later than three (3) business days following the conclusion or cancellation of the Auction and the Deposit of the Back Up Bidder shall be returned to such Back Up Bidder no later than three (3) business days following the closing of the sale of the Operating Assets to the Winning Bidder.

**H. Failure to Close**

Subject to the terms of the Winning Purchase Agreement, in the event a Winning Bidder (as determined by Debtor, after consultation with the Committee, and approved by the Court) fails to consummate the proposed transaction by the closing date contemplated in the Winning Purchase Agreement, (i) such Winning Bidder shall be deemed to have forfeited its Deposit and Debtor shall retain the Deposit and reserve the right to pursue all available remedies, whether legal or equitable,

available to it, and (ii) Debtor shall be authorized without further order of the Court to consummate the proposed transaction with the Back-Up Bidder.

I. **Submission to Jurisdiction of the Court**

All bidders will be deemed to have submitted to the jurisdiction of the Court with respect to all matters related to the Auction or with respect to the purchase of the Operating Assets.

J. **Expenses**

Subject to the terms of the Winning Purchase Agreement or any other executed agreement binding upon Debtor, all Qualified Bidders shall bear their own costs and expenses in connection with the Auction or with respect to the Operating Assets.

Dated: June 9, 2011    LAW OFFICES OF STEPHEN D. FINESTONE


/s/ Stephen D. Finestone
Stephen D. Finestone
Attorney for Debtor

# PROOF OF SERVICE

I, the undersigned, declare that I am over the age of eighteen years and am not a party to the within-entitled action; my business address is 456 Montgomery Street, 20th Floor, San Francisco, CA 94104.

On the below date I served the attached document(s) entitled:

**ORDER (A) APPROVING SALE PROCEDURES IN CONNECTION WITH THE PROPOSED SALE OF DEBTOR'S OPERATING ASSETS AT AUCTION (B) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN REAL PROPERTY AND PERSONAL PROPERTY LEASES AND EXECUTORY CONTRACTS IN CONNECTION THEREWITH (C) GRANTING RELATED RELIEF**

on all interested parties in said cause addressed as follows:

| | |
|---|---|
| Robert Izmirian<br>Buchalter Nemer<br>333 Market St., 25th Floor<br>San Francisco, CA 94105<br>**Via Email: rizmirian@buchalter.com** | Peter J. Gurfein<br>Landau Gottfried & Berger LLP<br>One Bush St., Ste. 600<br>San Francisco, CA 94104<br>**Via Email: pgurfein@lgbfirm.com** |

Minnie Loo
Office of the U.S. Trustee
235 Pine St., Ste. 700
San Francisco, CA 94104
**Via Email: minnie.loo@usdoj.gov**

☐ **(BY MAIL)** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the ordinary course of business for collection and mailing that same day at 456 Montgomery Street, 20th Floor, San Francisco, CA. I declare that I am readily familiar with the business practice of The Law Offices of Stephen Finestone for collection and processing of correspondence for mailing with the United States Postal Service and that the correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business.

Executed **June 9, 2011** at San Francisco, California.

☒ **(Federal)** I declare under penalty of perjury that the foregoing is true and correct.

Name:        Stephen D. Finestone        /s/ Stephen D. Finestone