Stephen D. Finestone (125675)
John F. Sullivan (175236)
LAW OFFICES OF STEPHEN D. FINESTONE
456 Montgomery Street, 20th Floor
San Francisco, CA 94104
Telephone: (415) 421-2624
Facsimile: (415) 398-2820
Email: sfinestone@pobox.com

Proposed Counsel for Debtor and Debtor in Possession
Nurserymen's Exchange, Inc.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 11-31985 |
| NURSERYMEN'S EXCHANGE, INC. | Chapter 11 |
| Debtor and Debtor in Possession | Date: June 30, 2011<br>Time: 10:30 a.m.<br>Place: 235 Pine Street, Courtroom 22<br>San Francisco, CA |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR ORDER APPROVING KEY EMPLOYEE INCENTIVE PROGRAM**

Nurserymen's Exchange, Inc. ("NEI" or the "Debtor"), debtor and debtor-in-possession in the above-captioned case, submits this memorandum of points and authorities in support of its Motion for Order Approving Key Incentive Program (the Motion").

**I.    THE BANKRUPTCY CASE AND THE COURT'S JURISDICTION**

On May 23, 2011 (the "Petition Date"), the NEI commenced the above-referenced Chapter 11 bankruptcy case (the "Bankruptcy Case") by filing a voluntary petition with this court under Chapter 11 of the Bankruptcy Code.[1]  The Debtor continues to manage and operate its business as a debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108.  No trustee or examiner has been appointed in this Bankruptcy Case.  An official committee of unsecured creditors was appointed by the Office of the United States Trustee in May 2011.

---

[1] All references to the "Bankruptcy Code" are to Title 11 of the United States Code.

MEM P&A ISO MOT. ORD. APPROV. KEIP       1

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## II. THE DEBTOR'S BUSINESS

Founded in 1941 as a San Francisco bulb brokerage business, and currently based in Half Moon Bay in the San Francisco Bay Area, the Debtor is a producer, broker and wholesaler of home decor products incorporating indoor blooming plants (miniature roses, sun stars, campanula), specialty foliage (miniature Christmas trees, bonsai, bamboo, cactus and succulents, etc.), holiday grow kits, and potted edibles. The Debtor offers a broad range of unique, differentiated products known for their horticultural excellence and inspired design.

The Debtor operates in two segments: the core business and the wholesale facility. The core business services clients nationwide across all major retail channels, including supermarket chains, mass merchandisers, home and garden centers, and specialty and independent operators. The core business includes the growing, brokerage, and distribution of home decor products. The core business also includes sales, marketing, and product design and development staff who collaborate with top-tier customers to create unique designs for their specific market needs. The wholesale center is a stand-alone wholesaler of flowers, foliage, designer dish gardens and hardgoods to smaller, independently owned specialty stores, florists, garden centers and supermarkets. The wholesale center also has a direct sales team and a packing and shipping facility that sells and ships directly to customers' individual stores.

Beginning in 2008, NEI faced challenges resulting from a declining economy and industry overcapacity, which spurred the need to implement aggressive restructuring initiatives. Notwithstanding these challenges, NEI implemented an aggressive crop plan that anticipated an economic recovery in 2010, which resulted in substantial overproduction and the operation of unproductive facilities during declining economy. Moreover, NEI was obligated to grow and bring to market a pipeline of expensive orchids that ramped up going into the recession, with no ability to reduce production due to prior purchase orders with suppliers.

Despite the vastly improved prospects created by NEI's restructuring efforts, and in consultation with its Board, its advisors and Wells Fargo, NEI determined in its reasonable business judgment that

the appropriate way to maximize the value of the business and creditor recovery is to conduct a sale of its assets under Bankruptcy Code section 363 or seek to restructure its existing indebtedness. Debtor intends to sell its operating business within approximately sixty days of the Petition Date.

**III.  THE KEY EMPLOYEE INCENTIVE PROGRAM AND ITS IMPORTANCE TO THE DEBTOR**

In the Motion, NEI proposes to adopt that certain Key Employee Incentive Plan (the "KEIP") approved by NEI's Board of Directors. Attached as Exhibit A to the Declaration of Justin Dautoff in Support of the Motion is a copy of the KEIP. The identities of the individuals are redacted from Exhibit A because revealing these identities to the public could damage the business operations of the Debtor. The Debtor created the KEIP before the Petition Date based on input from its corporate counsel and from FocalPoint Partners LLC, its investment banker. The Debtor's adoption of the KEIP would be in the best interests of the Debtor, its creditors, and the estate.

The KEIP is divided into three tiers. There are five Tier 1 participants. The Tier 1 participants are the individuals primarily responsible for the operations, strategic planning, merchandising, purchasing, and product sales of the Debtor. It has been extremely difficult for these employees to accomplish tasks required of them after the Petition Date. In addition to their normal job duties, these individuals have taken the lead in substantial communications with vendors, employees, customers, and the Debtor's bankruptcy professionals regarding the Bankruptcy Case and the implications thereof, as well as the gathering and disclosure of information to the bankruptcy court, the Debtor's bankruptcy professionals, and the Official Committee of Unsecured Creditors and its professionals.

These tasks, particularly vendor and customer interaction, are critical to the success of the Bankruptcy Case. Absent the ability to continue to obtain goods and services and to persuade Debtor's customers of NEI's ability to meet their needs, Debtor's business would rapidly deteriorate and creditors' chances of recovery of a meaningful return through a sale of the ongoing operations or a reorganization would be greatly reduced. Moreover, given the uncertainty of Debtor's ability to perform, a few important employees have left or indicated they may leave rather than remain and assist Debtor in its reorganization efforts. Some of Debtor's competitors have also begun to reach out to key employees seeking to lure them away. If some of these senior people leave, this will have a ripple effect throughout

Debtor's employee ranks and will negatively affect company morale. In Debtor's business judgment it is critical to be able to offer these key employees incentives tied to Debtor's ability to provide a return to the creditors in the case, as these terms will provide stimulus for the employees to remain on and perform at peak effort.

Each Tier 1 participant will receive an incentive payment equal to a percentage of his/her base salary. Such payment will be determined by the projected return to unsecured creditors in the Bankruptcy Case. The right to the initial portion of the incentive payment will be triggered by the sale or reorganization of the operating company, while the remainder of the incentive payment will be paid out over time.

There are five Tier 2 Participants. The Tier 2 participants are the individuals secondarily responsible for the duties described above, as well as for the internal relations of the Debtor. Each Tier 2 participant will receive an incentive payment equal to a percentage of his/her base salary. Such payment will be determined by the projected return to unsecured creditors in the Bankruptcy Case. The right to the initial portion of the incentive payment will be triggered by the sale or reorganization of the operating company, while the remainder of the incentive payment will be paid out over time.

There is one Tier 3 participant. The Tier 3 participant is the individual employed by the Debtor primarily responsible for the sale of the PUD property (the "Real Property Sale"), which is currently in contract for $8 million. The individual's responsibilities and efforts in connection with the Real Property Sale are in addition to his normal duties, which he continues to perform. The individual's efforts in connection with the Real Property Sale involve but are not limited to substantial communications with City and County officials regarding the Real Property Sale. The Tier 3 participant has extensive knowledge of real estate entitlement procedures and extensive experience dealing with such officials. The Tier 3 participant would become entitled to his entire incentive payment upon the closing of the Real Property Sale.

The best efforts of the Tier 1 and Tier 2 Participants are particularly critical at this point in time, when the Debtor is in the process of marketing itself for a sale or positioning itself for a successful reorganization. In fact, a number of these key employees have been interviewed by potential buyers of Debtor's operations, and one of the potential buyers indicated that the retention of some of these

employees was likely to be a contingency of any contract to purchase the business. The KEIP provides financial incentives for these participants to maximize their efforts, which will in turn maximize the going concern value of the Debtor. Likewise, if the KEIP is approved with respect to the Tier 3 participant, the Tier 3 participant will maximize his efforts with respect to the Real Property Sale, the prompt closing of which would directly or indirectly benefit all creditors in the Bankruptcy Case. In sum, the KEIP is calculated to achieve the level of performance desired by the Debtor.

In view of the debtor's forecasted revenues, the cost of the KEIP is reasonable. The expected total payout under the KEIP ranges from $268,533 to $594,444. When measured against the Debtor's estimated FY 2011 revenues of $51,170,000 and the Debtor's estimated assets of $34,755,036, the KEIP payouts are relatively minor. The cost of the KEIP is reasonable under the circumstances of the Bankruptcy Case.

## IV. THE FACTS AND CIRCUMSTANCES OF THE CASE JUSTIFY THE DEBTOR'S ADOPTION OF THE KEY EMPLOYEE INCENTIVE PROGRAM

The Debtor respectfully requests that the Court authorize its adoption of the KEIP pursuant to sections 105, 363(b), and 503(c) of the Bankruptcy Code. Section 105(a) permits the Court to "issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363(b) provides, in relevant part, that a debtor-in-possession "after notice and a hearing, may use, … other than in the ordinary course of business, property of the estate." Id., § 363(b).

Under applicable case law, courts should authorize business transactions outside the ordinary course of business if the Debtor has exercised sound business judgment. *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2nd Cir. 1983); *Committee of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to debtors' conduct"); *accord Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) *(citing Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 389-90 (6th Cir. 1986); *In re Delaware Hudson R.R. Co.*, 124 B.R. 169, 176 (Bankr. D. Del. 1991) (*citing In re Interco Inc.*, 128 B.R. 229, 234 (Bankr. E.D. Mo. 1991)). Under section 363, a debtor must establish that it has a valid

business purpose for using property of the estate outside the ordinary course of business. *Lionel Corp.*, 722 F.2d at 1070-1071.

Provided the debtor puts forth such a valid business purpose, however, a presumption arises that the debtor's decision was made on an informed basis, in good faith, and in the honest belief that the action was in the debtor's best interest. *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992).

Specifically, the Debtor's entry into the Agreements is proper under section 363 of the Bankruptcy Code. Given the uncertainty imposed by the chapter 11 process, and as explained in more detail above, it is clearly an exercise of the Debtor's sound business judgment to adopt the KEIP as to those individuals who bear the ultimate responsibility for achieving an expeditious and successful sale or reorganization of the Debtor and the Real Property Sale.

Section 503(c) does not provide otherwise. Section 503(c)(1) applies to insider retention payments, but here the KEIP is an incentive program that hinges upon the return to unsecured creditors (for Tiers 1 and 2) or closing of the Real Property Sale (for Tier 3), not upon simply remaining with the Debtor. Moreover, all Tier 2 and Tier 3 participants are non-insiders, and only one Tier 1 participant is an insider. Section 503(c)(2) is also inapplicable because it applies to severance payments to insiders. Section 503(c)(3) bars payments "outside the ordinary course of business" that are "not justified by the facts and circumstances of the case[,]" but as explained above, the payments anticipated by the KEIP at issue are justified by the facts and circumstances of the Bankruptcy Case. Moreover, the legal standard under section 363(b) – the business judgment standard – applies under section 503(c)(3). *In re Borders Group, Inc.*, 2011 Bankr. LEXIS 1537 at *31-*32, 54 Bankr. Ct. Dec. (LRP) 167 (Bankr. S.D.N.Y. Apr. 27, 2011).

Since the 2005 revisions to Section 503, courts have approved incentive plans based upon the future performance of the Debtor, or upon the amount realized upon the sale of the Debtor. *See, e.g.*, *In re Borders Group, Inc.*, *supra*, at *32 (additional compensation reasonable when "keyed to the achievement of [specific financial benchmarks], distributions to unsecured creditors, and either a section 363 going concern sale or the filing of a reorganization plan in short order"); *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 801-03 (Bankr. D. Del. 2007 )(approving management incentive plan

based on EBITDA targets); *In re Global Home Products*, 369 B.R. 778, 785-86 (Bankr. D. Del. 2007) (approving incentive plans based on EBITDA and sales targets); *In re Dana Corp.*, 358 B.R. 567, 574, 584 (Bankr. S.D.N.Y. 2006) (approving long-term incentive plan based on EBITDAR target); *In re Nobex Corp.*, 2006 Bankr. LEXIS 417 (Bankr. D. Del. Jan. 19, 2006) (approving incentive plan based on sale price of debtor). In this case, the performance of the Debtor will effectively be measured by the return to unsecured creditors, which is the critical variable in the KEIP as to Tier 1 and Tier 2 participants. The payment to the Tier 3 participant is based upon an event that will lead to a substantial flow of cash into the Debtor. Finally, given the amount of Debtor's revenue and the value of its assets, the potential amount of the KEIP payments is relatively small.

In sum, the Debtor submits that adoption of the KEIP is warranted under the facts and circumstances of the Bankruptcy Case and respectfully requests that the Court grant the Motion.

## V.     CONCLUSION

Based on the foregoing points and authorities, the Debtor respectfully requests that the Court grant relief as set forth in the form of order attached to the Motion as Exhibit A, or such other and further relief as is just and proper.

Dated: June 13, 2011                LAW OFFICES OF STEPHEN D. FINESTONE


                                    /s/ Stephen D. Finestone
                                    Stephen D. Finestone
                                    Proposed Counsel for Debtor and Debtor in Possession

MEM P&A ISO MOT. ORD. APPROV. KEIP                7

Case: 11-31985    Doc# 91    Filed: 06/13/11    Entered: 06/13/11 23:38:23    Page 7 of 7