Stephen D. Finestone (125675)
John F. Sullivan (175236)
LAW OFFICES OF STEPHEN D. FINESTONE
456 Montgomery Street, 20th Floor
San Francisco, CA 94104
Telephone: (415) 421-2624
Facsimile: (415) 398-2820
Email: sfinestone@pobox.com

Counsel for Debtor and Debtor in Possession
Nurserymen's Exchange, Inc.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>NURSERYMEN'S EXCHANGE, INC.<br><br>    Debtor and Debtor in Possession | Case No. 11-31985<br><br>Chapter 11<br><br>**MOTION FOR ORDER APPROVING THE SALE OF DEBTOR'S OPERATING ASSETS TO THE HIGHEST AND BEST BID FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS**<br><br>**Date:** July 11, 2011<br>**Time:** 9:00 a.m.<br>**Place:** 235 Pine Street, Courtroom 22<br>        San Francisco, CA<br><br>**LIEN CLAIMANTS:**<br>**Wells Fargo Bank, IBM Credit LLC, Ikon Financial Services and IOS Capital** |

Nurserymen's Exchange, Inc. ("NEI" or the "Debtor"), debtor and debtor-in-possession in the above-captioned case, hereby moves this Court for entry of an Order Approving the Sale of Debtor's Operating Assets to the winning bidder at an auction to be held on July 8, 2011.

The assets (the "Operating Assets") being sold are generally described below:

- Any and all assets and rights of the Seller [Debtor] that are used in or held for use in the Business, other than the Excluded Assets, including the following:

(a) Inventory;

(b) Accounts Receivable;

MOTION RE SALE OF OPERATING ASSETS

1

(c) Real Property;

(d) Equipment;

(e) all rights under Assumed Contracts;

(f) all Intellectual Property Rights owned or used by the Seller [Debtor]

(g) all goodwill relating to the Business;

(h) all claims, causes of action, rights of recovery or setoff of any kind against any Person who holds an Assumed Liability;

(i) all Books and Records.

The capitalized terms used above are defined in the form Asset Purchase Agreement prepared by Debtor's counsel.

This motion is based upon the Notice of Motion, the Motion and the Declaration of Justin Dautoff, and upon such other oral and documentary evidence as may be presented prior to or at the hearing on the Motion.

## BACKGROUND/PROCEDURAL STATUS

Debtor filed this case on May 23, 2011 and is operating as a Debtor in Possession pursuant to Bankruptcy Code sections 1107 and 1108. An Official Committee of Unsecured Creditors (the "Committee") has been appointed and is represented by counsel.

Founded in 1941 as a San Francisco bulb brokerage business, and currently based in Half Moon Bay in the San Francisco Bay Area, Debtor is a producer, broker and wholesaler of home decor products incorporating indoor blooming plants (miniature roses, sun stars, campanula), specialty foliage (miniature Christmas trees, bonsai, bamboo, cactus and succulents, etc.), holiday grow kits, and potted edibles.

Debtor operates in two segments: the core business and the wholesale facility. The core business services clients nationwide across all major retail channels, including supermarket chains, mass merchandisers, home and garden centers, and specialty and independent operators. The core business includes the growing, brokerage, and distribution of home decor products. The core business also includes sales, marketing, and product design and development staff who collaborate with top-tier customers to create unique designs for their specific market needs. The wholesale center is a stand-alone wholesaler of flowers, foliage, designer dish gardens and hardgoods to smaller, independently owned

specialty stores, florists, garden centers and supermarkets. The wholesale center also has a direct sales team and a packing and shipping facility that sells and ships directly to customers' individual stores.

Seeking to recover from operating and general economic difficulties that began in 2008, in an attempt to restore operational and financial stability, NEI implemented aggressive operational and restructuring initiatives that have positioned NEI for more efficient, streamlined operations, greater responsiveness to customers' needs, and future growth in revenues and profitability.

Beginning in September 2010, utilizing the services of an investment banker, FocalPoint Securities, LLC ("FocalPoint"), NEI began a two-part solicitation process designed to either (i) refinance the existing lender, or (ii) find a financial or strategic buyer for NEI's operating business. On a parallel track to this process, NEI has marketed certain real estate assets that are not essential to its operations. The efforts to market the real estate have culminated in the proposed sale of certain real estate to RL Communities for $8 million. The sale of the real estate is the subject of a separate motion to be heard on July 22, 2011.

As a result of the solicitation process initiated by FocalPoint, NEI received a number of written proposals to provide working capital financing from financial institutions, but these proposals did not provide enough capital to pay off pre-petition indebtedness or were contingent on new equity being invested into the business. In addition to lender proposals, NEI received several indications of interest to purchase NEI's assets. NEI executed a letter of intent that provided for a period of exclusivity for one proposed buyer, which began engaging in extensive business and legal due diligence. NEI did not finalize an asset purchase agreement with the interested party and exclusivity was terminated less than two weeks before the bankruptcy filing. Since the termination of exclusivity, Debtor's representatives have continued to market the Operating Assets and meet with and provide information to interested buyers.

**THE OPERATING ASSETS AND THE SALE PROCEDURES**

The Operating Assets consist primarily of the real property used in the operation of the business, the inventory, the accounts receivable, Debtor's contractual rights to certain executory contracts, the equipment used in the operation of the business, the goodwill associated with Debtor's business and Debtor's intellectual property, including trademarks, patents and the like.

Upon filing its case, Debtor filed a motion seeking to establish approved procedures for handling the sale of the Operating Assets (the "Sale Procedures"). By an order dated June 10, 2011, the Court granted Debtor's motion and approved the Sale Procedures to govern the sale of the Operating Assets. In very general terms, the Sale Procedures provide as follows:

- Parties wishing to bid on the Operating Assets must execute a confidentiality and non-disclosure agreement to have access to confidential due diligence information;

- An interested party will be provided a form Asset Purchase Agreement for the purchase of the Operating Assets;

- Unless Debtor selects a stalking horse bidder, which it must do no later than June 30, 2011, all bids must be submitted by July 6, 2011;

- Bids must include adequate information to demonstrate to the Debtor and the Committee that the bidder has the financial ability to consummate the purchase of the Operating Assets;

- An auction will be held on July 8, 2011 between all parties who are deemed Qualified Bidders (as that term is used in the Sale Procedures);

- Prior to the auction, Debtor will notify all Qualified Bidders of the highest and best bid submitted by the bid deadline;

- Any party that makes a bid must provide a deposit of 5% of the purchase price being offered;

- Wells Fargo may credit bid at the auction;

- Debtor may, in consultation with the Committee and pursuant to the terms in the Sales Procedures, cancel the auction;

- If the auction does go forward on July 8, 2011, Debtor, after consultation with the Committee, shall select a Winning Bidder (as that term is used in the Sales Procedures) and seek approval of the sale of the Operating Assets to such bidder at the hearing set for July 11, 2011;

- If there is a second highest bid (the "Backup Bid"), in the event the Winning Bidder fails to consummate the sale, Debtor shall close the sale with the Backup Bidder without further order of the Court; and,

• The Sale Procedures also establish a procedure for dealing with the assumption of executory contracts and the assignment of those contracts to the Winning Bidder, and any dispute in connection with the assumption and assignment.

### Sale Free and Clear of Liens

By this Motion, Debtor seeks an order approving the sale free and clear of the liens of Wells Fargo, IBM Credit LLC, Ikon Financial Services and IOS Capital, and of all claims and interests, with all such liens, claims and interests attaching the to proceeds of sale to the extent, validity and priority existing prior to the sale.

### Buyer to Receive Section 363(m) Protection

The Motion seeks a determination that the proposed buyer is a good faith purchaser and entitled to the protections provided by Bankruptcy Code section 363(m). Section 363(m) of the Bankruptcy Code provides that "[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith . . . ." 11 U.S.C. § 363(m). Under Bankruptcy Code section 363(m), "an appeal of a bankruptcy court's ruling on a foreclosure action [or sale] generally cannot affect the rights of a good faith purchaser of the foreclosed property, unless the debtor [or other complaining party] stays the foreclosure [or other] sale pending an appeal." *Mann v. Alexander Dawson, Inc. (In re Mann)*, 907 F.2d 923, 926 (9th Cir. 1990) "[T]he primary goal of the mootness rule [embodied in section 363(m)] 'is to protect the interest of a good faith purchaser . . . of the property,' thereby assuring finality of sales." *Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.)*, 846 F.2d 1170, 1173 (9th Cir. 1988) (quoting *Community Thrift & Loan v. Suchy (In re Suchy)*, 786 F.2d 900, 901-02 (9th Cir. 1985). Lack of good faith for purposes of Bankruptcy Code section 363(m) is generally determined by the existence of fraudulent conduct or insider dealing during the sale process. *See, e.g., In re Exennium, Inc.*, 715 F.2d 1401 (9th Cir. 1983).

As the Winning Bidder is not yet known, Debtor anticipates submitting a subsequent declaration to establish the facts necessary for the Court to determine that the Winning Bidder qualifies as a good faith purchaser. *See e.g. T.C. Investors v. Joseph (In re M Capital Corp*, 290 B.R. 743, 748-749 (9th Cir. BAP 2003).

# Legal Argument

Bankruptcy Code section 363 provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." Bankruptcy Code § 363(b). To approve the use, sale or lease of property outside of the ordinary course of business, the Debtor must show four requirements: "(1) that a sound business reason exists for the sale; (2) there has been adequate and reasonable notice to interested parties, including full disclosure of the sale terms and the Debtor's relationship with the buyer; (3) that the sale price is fair and reasonable; and (4) that the proposed buyer is proceeding in good faith." *In re Medical Software Solutions*, 286 B.R. 431 (Bankr. D. Utah 2002). *See Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19 (9th Cir. BAP 1988) (quoting *Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.*), 780 F.2d 1223, 1226 (5th Cir. 1986). In general, bankruptcy courts often defer to a debtor's business judgment regarding the sale of estate assets, unless such decision is arbitrary and capricious. Courts generally will not second-guess a debtor's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code." See In re *Curlew Valley Assocs.*, 14 B.R. 506, 511-514 (Bankr. D. Utah 1981). *See also, Committee of Equity Sec. Holders v. Lionel Corp (In re Lionel Corp)*, 722 F.2d 1063, 1070 (2nd Cir. 1983).

The Court should also consider whether the proposed transaction will further the diverse interests of the debtor, creditors, and equity holders, whether the assets are increasing or decreasing in value, and whether allowing the transaction would render meaningless the protections afforded to creditors under chapter 11. *See In re Work Recovery, Inc.*, 202 B.R. 301, 304 (Bankr. D. Ariz. 1996) (citing *In re Continental Air Lines, Inc.*, 780 F.2d 1223 (5th Cir. 1986)); *see also In re Chrysler LLC*, 576 F.3d 108, 117–18 (2d Cir. 2009)

Debtor submits that the sale of the Operating Assets pursuant to the procedures set forth in the Sales Procedures is well within the exercise of Debtor's reasonable business judgment. FocalPoint has been marketing the Operating Assets since the fall of 2010, while also seeking possible alternative financing. Based on those efforts, the proposed sale, depending on what bids are received, has the potential to maximize return for the creditors. The Sales Procedures establish a fair method for

auctioning the Operating Assets and obtaining the highest and best bid for them. Moreover, the Committee is also involved in the process to attempt to obtain the best result for creditors. Finally, if the Debtor and the Committee determine that there is not an appropriate bid, they can cancel the auction.

Debtor is authorized to complete the sale pursuant to Bankruptcy Code section 363(f), which provides, the Debtor may sell property free and clear of any lien, claim, or interest in such property, if, among other things:

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

Satisfaction of any one of the five requirements will be sufficient to permit the sale of the Operating Assets free and clear of liens, claims, encumbrances, pledges, mortgages, security interests, charges, options, and other interests (collectively, the "Interests"). The Debtor believes that other than the Wells Fargo lien listed above, the remaining interests listed are the result of cautionary UCC filings in connection with leases. To the extent there are liens senior to the Wells Fargo lien, Debtor does not expect any of the putative lienholders to object, or otherwise expects the price garnered for the Operating Assets to be in excess of the value of any liens. Debtor understands that if a Winning Bidder is chosen, Wells Fargo consents to the sale.

Debtor also seeks waiver of the 14 day stay provided for in Bankruptcy Rule 6004(h), which provides that an "order authorizing the use, sale, or lease of property ... is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Debtor requests that the order approving the sale be effective immediately by providing that the 14 day stay under Bankruptcy Rule 6004(h) is waived. The stay should be eliminated to allow the sale to close immediately "where there has been no objection to the procedures." 10 Collier on Bankruptcy 15th Ed. Rev ¶6064.09. Here, absent an unexpected objection, there is no reason why the stay should not be lifted in this instance.

**Conclusion**

Based on the above, Debtor requests that the Court approve the sale of the Operating Assets to the Winning Bidder, if any, determined at the July 8, 2011 auction. Debtor further requests that the Court make a finding that the buyer is a good faith purchaser and entitled to the protections of Bankruptcy Code section 363(m). Finally, Debtor requests that the Court waive the stay provided for in Bankruptcy Rule 6004(h) with respect to the effectiveness of the order approving the sale of the Operating Assets.

Dated: June 22, 2011			LAW OFFICES OF STEPHEN D. FINESTONE


				/s/ Stephen D. Finestone
				Stephen D. Finestone
				 Attorneys for Debtor and Debtor in Possession