Stephen D. Finestone (125675)
John F. Sullivan (175236)
LAW OFFICES OF STEPHEN D. FINESTONE
456 Montgomery Street, 20th Floor
San Francisco, CA 94104
Telephone: (415) 421-2624
Facsimile:  (415) 398-2820
Email: sfinestone@pobox.com

Counsel for Debtor and Debtor in Possession
Nurserymen's Exchange, Inc.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>NURSERYMEN'S EXCHANGE, INC.<br><br>    Debtor and Debtor in Possession | Case No. 11-31985<br><br>Chapter 11<br><br>**DECLARATION OF JUSTIN DAUTOFF IN SUPPORT MOTION FOR ORDER APPROVING THE SALE OF DEBTOR'S OPERATING ASSETS TO THE HIGHEST AND BEST BID FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS**<br><br>**Date:** July 11, 2011<br>**Time:** 9:00 a.m.<br>**Place:** 235 Pine Street, Courtroom 22<br>          San Francisco, CA |

1.    I am the Chief Operating Officer of Nurserymen's Exchange, Inc. ("NEI" or the "Debtor"), the debtor and debtor in possession in the above-captioned Chapter 11 case. I make this declaration in support of the Motion for Order Approving the Sale of Debtor's Operating Assets to the Highest and Best Bid Free and Clear of Liens, Claims and Interests (the "Motion"). If called upon to testify as to the matters set forth in this declaration, I could and would competently testify thereto.

2.    On May 23, 2011 (the "Petition Date"), NEI filed a voluntary petition with this court for reorganization under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"),

commencing the above-referenced bankruptcy case (the "Case"). Debtor continues to manage and operate its business as a debtor in possession. No trustee or examiner has been appointed in this chapter 11 case and no committee has been appointed or designated.

3. Founded in 1941 as a San Francisco bulb brokerage business, and currently based in Half Moon Bay in the San Francisco Bay Area, Debtor is a producer, broker and wholesaler of home decor products incorporating indoor blooming plants (miniature roses, sun stars, campanula), specialty foliage (miniature Christmas trees, bonsai, bamboo, cactus and succulents, etc.), holiday grow kits, and potted edibles.

4. Debtor operates in two segments: the core business and the wholesale facility. The core business services clients nationwide across all major retail channels, including supermarket chains, mass merchandisers, home and garden centers, and specialty and independent operators. The core business includes the growing, brokerage, and distribution of home decor products. The core business also includes sales, marketing, and product design and development staff who collaborate with top-tier customers to create unique designs for their specific market needs. The wholesale center is a stand-alone wholesaler of flowers, foliage, designer dish gardens and hardgoods to smaller, independently owned specialty stores, florists, garden centers and supermarkets. The wholesale center also has a direct sales team and a packing and shipping facility that sells and ships directly to customers' individual stores.

5. Seeking to recover from operating and general economic difficulties that began in 2008, in an attempt to restore operational and financial stability, NEI implemented aggressive operational and restructuring initiatives that have positioned NEI for more efficient, streamlined operations, greater responsiveness to customers' needs, and future growth in revenues and profitability.

6. Beginning in September 2010, utilizing the services of an investment banker, FocalPoint Securities, LLC ("FocalPoint"), NEI began a two-part solicitation process designed to either (i) refinance the existing lender, or (ii) find a financial or strategic buyer for NEI's operating business. On a parallel track to this process, NEI has marketed certain real estate assets that are not essential to its operations.

7. The efforts to market the real estate have culminated in the proposed sale of certain real estate to RL Communities for $8 million. The sale of the real estate is the subject of a separate motion

DAUTOFF DECLARATION RE SALE OF OPERATING ASSETS
2

Case: 11-31985   Doc# 117   Filed: 06/22/11   Entered: 06/22/11 19:17:53   Page 2 of 5

to be heard on July 22, 2011.

8. As a result of the solicitation process initiated by FocalPoint, NEI received a number of written proposals to provide working capital financing from financial institutions, but these proposals did not provide enough capital to pay off pre-petition indebtedness or were contingent on new equity being invested into the business. In addition to lender proposals, NEI received several indications of interest to purchase NEI's assets. NEI executed a letter of intent that provided for a period of exclusivity for one proposed buyer, which began engaging in extensive business and legal due diligence. NEI did not finalize an asset purchase agreement with the interested party and exclusivity was terminated less than two weeks before the bankruptcy filing.

9. Debtor owns assets used in connection with the operation of its business. Separate and apart from the Operating Assets, Debtor owns real estate. As noted in Paragraph 8 above, one of the real estate assets is the subject of a separate motion to approve its sale. There is a second real estate asset not used in the operation of the business known as the Open Space Land. This property consists of approximately 407 acres, is zoned as "open space" and is located in the mountains behind Debtor's operations. The Open Space Land is not being sold through this Motion.

10. The Operating Assets consist primarily of the real property used in the operation of the business, the inventory, the accounts receivable, Debtor's contractual rights to certain executory contracts, the equipment used in the operation of the business, the goodwill associated with Debtor's business and Debtor's intellectual property, including trademarks, patents and the like.

11. Upon filing its case, Debtor filed a motion seeking to establish approved procedures for handling the sale of the Operating Assets (the "Sale Procedures"). By an order dated June 10, 2011, the Court granted Debtor's motion and approved the Sale Procedures to govern the sale of the Operating Assets. In very general terms, the Sale Procedures provide as follows:

- Parties wishing to bid on the Operating Assets must execute a confidentiality and non-disclosure agreement to have access to confidential due diligence information;

- An interested party will be provided a form Asset Purchase Agreement for the purchase of the Operating Assets;

- Unless Debtor selects a stalking horse bidder, which it must do no later than June 30, 2011, all bids must be submitted by July 6, 2011;

- Bids must include adequate information to demonstrate to the Debtor and the Committee that the bidder has the financial ability to consummate the purchase of the Operating Assets;

- An auction will be held on July 8, 2011 between all parties who are deemed Qualified Bidders (as that term is used in the Sale Procedures);

- Prior to the auction, Debtor will notify all Qualified Bidders of the highest and best bid submitted by the bid deadline;

- Any party that makes a bid must provide a deposit of 5% of the purchase price being offered;

- Wells Fargo may credit bid at the auction;

- Debtor may, in consultation with the Committee and pursuant to the terms in the Sales Procedures, cancel the auction;

- If the auction does go forward on July 8, 2011, Debtor, after consultation with the Committee, shall select a Winning Bidder (as that term is used in the Sales Procedures) and seek approval of the sale of the Operating Assets to such bidder at the hearing set for July 11, 2011;

- If there is a second highest bid (the "Backup Bid"), in the event the Winning Bidder fails to consummate the sale, Debtor shall close the sale with the Backup Bidder without further order of the Court; and,

- The Sale Procedures also establish a procedure for dealing with the assumption of executory contracts and the assignment of those contracts to the Winning Bidder, and any dispute in connection with the assumption and assignment.

12. Based on the marketing efforts, and the proposed draft Asset Purchase Agreement along with the proposed bidding procedures, in my business judgment, depending on the bids received, the sale of the Operating Assets is in the best interest of the bankruptcy estate and its creditors.

///

///

DAUTOFF DECLARATION RE SALE OF OPERATING ASSETS

4

Case: 11-31985   Doc# 117   Filed: 06/22/11   Entered: 06/22/11 19:17:53   Page 4 of 5

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed this 22nd day of June 2011, at Half Moon Bay, California.

/s/ Justin Dautoff
Justin Dautoff