UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| In re: | CASE NO. 11-31985 |
|---|---|
| NURSERYMEN'S EXCHANGE, INC. | CHAPTER 11 |
| Debtor. | |
| | **DECLARATION OF CHARLES I. KOSMONT IN SUPPORT OF DEBTOR'S MOTION FOR ORDER APPROVING THE SALE OF DEBTOR'S OPERATING ASSETS TO THE HIGHEST AND BEST BID FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES** |

I, Charles I. Kosmont, declare as follows:

1. I am a the Chairman of the Board and Chief Executive Officer of Floramoda, Inc., the proposed purchaser (the "Purchaser") of certain of the Debtor's assets pursuant to the Debtor's Motion for Order Approving the Sale of Debtor's Operating Assets to the Highest and Best Bid Free and Clear of Liens, Claims and Encumbrances (the "Sale Motion"). Purchaser is a wholly owned subsidiary of Monterey Peninsula Horticulture, Inc. ("MPHI"). MPHI and its subsidiaries have been in the horticultural business for approximately thirty years. I am a majority owner of MPHI. MPHI also owns subsidiaries Rocket Farms, Inc. ("Rocket Farms") and Growers Transplanting, Inc. ("GTI") I am over eighteen years of age.

2. I submit this declaration in support of the Sale Motion. Pursuant to the Sale Motion, the Debtor seeks approval of that certain Asset Purchase Agreement between the Debtor and the Purchaser (the "APA"). MPHI has guaranteed Purchaser's obligations under the

APA. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents maintained under my general supervision and control in the ordinary course of business, my review of the Debtors' books, records and business through Purchaser's due diligence effort or my opinion based upon my experience, knowledge and information concerning the operations and financial affairs of MPHI, Purchaser and its affiliated companies. If I were called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration.

3. MPHI first expressed interest in acquiring the Debtor's assets in January 2011. After discussions with representatives of the Debtor and initial due diligence, MPHI provided the Debtor with a Letter of Interest dated March 2, 2011 for the acquisition of substantially all of the Debtor's assets (the "LOI"). The LOI set forth the terms and conditions upon which MPHI or its affiliates would consummate the purchase, contemplated additional due diligence and provided MPHI with a period of exclusivity to negotiate a transaction with the Debtor. During March and April 2011 MPHI continued to conduct additional due diligence and negotiations with the Debtor in an attempt to reach agreement on the terms of a transaction. In addition, MPHI engaged in discussions with certain insiders of the Debtor (the "Insiders")who owned certain real property upon which the Debtor's operated their business regarding the terms and conditions upon which the Insiders would lease their owned real property to MPHI Unfortunately negotiations between MPHI and the Debtor broke down and on May 11, 2011, the Debtor informed MPHI that it was terminating exclusivity.

4. After the Debtor commenced its chapter 11 case MPHI reinitiated discussions with the Debtor regarding a potential acquisition. In addition, MPHI made further efforts to reach agreement with the Insiders regarding the terms of real property leases which were essential to any acquisition. MPHI and the Debtor discussed MPHI being selected as a "stalking horse" for a sale transaction. Although the parties could not reach agreement on the terms of an agreement that would result in MPHI being selected as a "stalking horse", the parties continued discussions throughout the period during which the Debtor was marketing its assets for sale to third parties. All negotiations with the Debtor were conducted at arms length and were in good faith.

5. Rocket Farms is a vendor of the Debtor. MPHI and its affiliated entities bank with Wells Fargo Bank, the principle secured creditor of the Debtor. Other than those relationships neither MPHI, Rocket Farms, GTI or Purchaser (collectively, the "Purchaser Entities") have any prepetition or post petition relationships with the Debtor, its equity holders, directors, officers or agents.

6. As discussed above, the Debtor operates on real property owned by the Insiders. As part of its due diligence efforts and in an effort to secure long term leases with the Insiders if Purchaser were to acquire the Debtor's assets, Purchaser engaged the Insiders in negotiations regarding the terms and conditions under which the Insiders would lease their real property to Purchaser. Those discussions resulted in long term leases which will be entered into between the Insiders and the Purchaser contingent upon consummation of the sale. Copies of those leases are attached to the APA.

58760-001\DOCS_LA:241161.2                    3

Case: 11-31985    Doc# 169    Filed: 07/14/11    Entered: 07/14/11 13:32:14    Page 3 of 5

7. As part of its discussions with the Debtor, the Purchaser has engaged members of the Debtor's senior management team to discuss their employment with the Purchaser upon consummation of a sale. While the Purchaser expects to hire certain members of management after the closing, there are no agreements, written or oral, governing the terms of such employment and the Purchaser expects to retain such individuals on market terms.

8. As part of its discussions with the Debtor, the Purchaser is aware that certain vendors of the Debtor are important to Purchaser's continued operation of the business after closing. The Purchaser has had discussions with certain of those vendors, which discussions are expected to continue. The Purchaser expects to negotiate with such vendors the terms under which they are willing to continue to provide goods and services to the Purchaser after closing.

9. While I have heard that certain unspecified entities might be interested in bidding on the Debtors' assets, no persons or entities have contacted me or, to my knowledge any other officer, agent or representative of any of the Purchaser in connection with the sale by any person or entity that has indicated an interest in potentially acquiring the Debtors' assets or that the Purchaser Entities' believe might have such an interest. None of the Purchaser Entities has had any discussions or entered into any agreement, understanding or arrangement with any person or entity that has prohibited such party from conducting due diligence on the Debtor or considering bidding on the Debtor's assets.. Prior to being informed by the Debtor that there were no other bidders for the Debtors' assets, none of the Purchaser Entities, or, to the best of my knowledge, any of their agents or representatives have received any information from the Debtor

58760-001\DOCS_LA:241161.2

4

Case: 11-31985    Doc# 169    Filed: 07/14/11    Entered: 07/14/11 13:32:14    Page 4 of 5

or any of its agents or representatives, regarding the Debtor's marketing efforts or the sale process that was not made available to all bidders. Accordingly, the Purchaser's participation in the sale process has been without fraud or collusion by the Purchaser with any other party and Purchaser has not attempted to take unfair advantage of other bidders.

10. The APA contemplates the assumption and assignment of two non residential real property leases from the Debtor to the Purchaser with total monthly rent obligations of approximately $4,000. Purchaser will have sufficient liquidity to operate the business acquired by from the Debtor post closing, including making the payments required under the Leases which come due after the closing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 13TH day of July 2011 at SALINAS, California

_____
Charles I. Kosmont