LANDAU GOTTFRIED & BERGER LLP
PETER J. GURFEIN (State Bar No. 127173)
PETER M. BRANSTEN (State Bar No. 113352)
MONICA RIEDER (State Bar No. 263250)
One Bush Street, Suite 600
San Francisco, CA 94104
Telephone: (415) 956-1630
Facsimile: (415) 399-9480
pgurfein@lgbfirm.com
pbransten@lgbfirm.com
mrieder@lgbfirm.com

Counsel for the Official Committee of Unsecured Creditors of Tally One, Inc.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>TALLY ONE, INC.<br><br>f/k/a Nurserymen's Exchange, Inc.<br><br>Debtor and Debtor in Possession. | Case No. 11-bk-31985-DM<br><br>Chapter 11<br><br>**Date:** September 23, 2011<br>**Time:** 10:00 a.m.<br>**Place:** 235 Pine Street<br>Courtroom 22<br>San Francisco, CA 94104 |

**MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ORDER CONVERTING DEBTOR'S CHAPTER 11 CASE TO CHAPTER 7; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

The Official Committee of Unsecured Creditors (the "Committee") of Tally One, Inc., formerly known as Nurserymen's Exchange, Inc. (the "Debtor"), hereby moves the Court, under 11 U.S.C. § 1112(b), for an order converting the Debtor's Chapter 11 case to a case under Chapter 7. There is cause to convert or dismiss the case under § 1112(b), because the sale of the Debtor's operating assets has left the estate without a reasonable likelihood of rehabilitation and unnecessary Chapter 11 administrative costs are causing diminution of the estate. Further, the sale and the accompanying termination of the Debtor's employees left the Debtor without a business to operate and without any employees or estate representatives, other than equity

holders, who are unable to act as appropriate estate fiduciaries because of inherent conflicts between their self-interests and the best interests of the estate.

The estate now comprises parcels of real property and potential litigation claims. The sale of the real property does not require expertise that a retained real estate broker could not provide. The claims include potential avoidance actions and claims against the insiders, against whom the Committee has determined the estate does have claims.

Conversion is in the best interest of creditors and the estate, as opposed to dismissal of the Chapter 11 case or appointment of a Chapter 11 trustee, because there are significant assets remaining to be administered, and that administration can be performed more efficiently by a Chapter 7 trustee than a Chapter 11 trustee. Accordingly, the Committee requests that the Court enter an order converting the Debtor's Chapter 11 case to a case under Chapter 7.

## MEMORANDUM OF POINTS AND AUTHORITIES

### A. Statement of Facts

On May 23, 2011, the Debtor commenced the above-captioned case by filing a voluntary Chapter 11 petition. The Debtor is headquartered in Half Moon Bay, California, and at the time of the filing was operating as a producer, broker, and wholesale of home décor products incorporating indoor blooming plants, specialty foliage, and holiday grow kits. The Debtor's schedules listed significant personal property assets, including accounts receivable, inventory, greenhouses, and equipment, associated with the Debtor's business operations. The schedules also indicated that the Debtor owned three pieces of real property in Half Moon Bay: (1) approximately 28 acres described as "Planned Unit Development Land," which the Debtor has valued at $8 million (the "PUD Property"), (2) approximately 408 acres described as "Open Space Land," which the Debtor has valued at $5 million (the "Open Space Property"), and (3) approximately 39 acres described as "Land used in business operations," which the Debtor has valued at $4,000,000 (the "Nursery Property").

Along with the petition, the Debtor filed a number of first-day motions, including a motion to sell substantially all of its operating assets. On June 10, 2011, the Court entered an

order approving an auction sale process for sale of the Debtor's assets. The sale process resulted only in a single bid, submitted by Floramoda, Inc. ("Floramoda"). The Debtor sought to proceed with the sale of substantially all of its operating assets to Floramoda. The Committee opposed the sale on a number of grounds but ultimately consented to the sale based on a number of revisions to the asset purchase agreement with Floramoda (the "APA") that increased the value to the estate from the sale. On July 19, 2011, the Court entered an *Amended Order Approving the Sale of Debtor's Operating Assets to the Highest and Best Bid Free and Clear of Liens, Claims, and Interests* (the "Sale Order").

Under the APA and the Sale Order, the Nursery Property and all of the personal property assets associated with the Debtor's business were transferred to Floramoda on August 5, 2011. There are significant assets left in the Debtor's estate—the PUD Property, the Open Space Property, avoidance actions, and claims and causes of action, including claims against the Debtor's insiders[1]—but they are all assets that can be liquidated without specialized knowledge of or experience with the Debtor's operations.

Further, in accordance with the APA, the Debtor terminated all of its employees as of August 5, 2011. A number of those employees, including the Debtor's former "Responsible Individual"—the Debtor's former Chief Financial Officer, Justin Dautoff—were hired by Floramoda. The Court has recently entered an order approving the Debtor's application to designate Gail Hollingsworth, one of the Debtor's equity holders, as its new Responsible Individual. However, the Committee believes that Ms. Hollingsworth is not an appropriate choice for the position, because the estate holds claims against the insiders and/or property of the insiders, and because the equity holders (who are clearly out of the money) have no pecuniary interest in maximizing the recovery by the estate. Any other equity holder the Debtor might name for the position would be inappropriate for the same reasons.

While the Committee has been attempting to work with the Debtor to liquidate the remaining assets of the estate, the Committee has become convinced that the Debtor cannot do so

---

[1] The estate will also receive any money collected on account of accounts receivable that were outstanding on the closing date of the sale to Floramoda. These accounts receivable will be collected by Floramoda pursuant to agreement among the Debtor, Wells Fargo Bank, and Floramoda.

effectively. First, the Committee requested information from the Debtor regarding potential avoidance actions (which constitute the only asset of the estate not subject to the lien of Wells Fargo Bank, N.A. ("Wells Fargo")). According to the Debtor's Statement of Financial Affairs, the Debtor made over $13 million in payments in the 90 days prior to the bankruptcy filing. On July 29, 2011, Committee counsel sent the Debtor's counsel a letter requesting supporting documentation regarding preference period payments over $10,000, for the Committee to perform an analysis of the potential recoverability of those payments. On August 19, 2011, after multiple follow-up e-mails, the Debtor's counsel provided a spreadsheet listing invoice numbers. On August 23, 2011, the Debtor's counsel provided a second spreadsheet containing additional invoice and payment history data for specific vendors. None of the actual documents relating to the transfers (including check copies, wire transfer receipts, invoices, or correspondence) have been provided to the Committee. The Debtor's counsel indicated that he was unable to produce these documents in a timely fashion due to "lack of manpower." While the Debtor's counsel indicated that much of the information sought by the Committee was located on a server in Half Moon Bay, the Debtor's counsel has not consented to grant the Committee's counsel access to the server to retrieve the information directly. The Committee has thus been hampered in its efforts even to assess the potential avoidance actions held by the estate and is not optimistic about the prospects for pursuing the viable actions with any degree of efficiency while the Debtor remains in possession.

Second, when the Debtor received an offer of $6.5 million for the PUD Property, the Debtor contacted the Committee and Wells Fargo to solicit their views regarding the offer. Both the Committee and Wells Fargo indicated that they believed the Debtor should accept the offer. Instead, the Debtor countered the offer. Although the parties subsequently entered into a purchase agreement at the $6.5 million price, the Committee is concerned that the Debtor (of whom there are now no representatives other than the Debtor's equity holders) disregarded the views of Wells Fargo and the Committee, who are the only real parties in interest. In short, the Committee has become deeply concerned about the Debtor's ability to liquidate the estate's remaining assets effectively while under the control of an equity holder who is entirely out of the

money and holds potential conflicts of interest.

Moreover, although the Committee has held discussions with the Debtor respecting a possible plan of liquidation, under which a liquidating trust would be placed in possession and control of the estate, there are legal issues that may prevent the confirmation of such a plan. The estate does not have any cash, other than the accounts receivable proceeds that are being collected for the benefit of Wells Fargo as the secured lender. The DIP budget which was recently approved in conjunction with the entry of the Order extending the DIP Financing to November 5, 2011, does not provide any funds for the estate to operate through its professionals. Thus, the estate has no readily available cash. Any plan, even a liquidating plan, must comply with Bankruptcy Code § 1129(a)(9), which requires payment of administrative claims in full on the effective date of the plan (unless the claimant consents to different treatment). As of July 22, 2011, the claims bar date for § 503(b)(9) claims, the total amount of the filed § 503(b)(9) claims was approximately $635,000. Under the APA, Floramoda was granted an administrative claim of $400,000 to be treated *pari passu* with § 503(b)(9) claims. The estate professionals, including the Committee's professionals, have not yet filed their fee applications, but the Committee estimates that the total amount of professional fees and expenses will be well in excess of $500,000. In short, at least $1.5 million in administrative claims will have to be paid in conjunction with the confirmation of any liquidating plan. The estate does not have those funds available. Thus, it is questionable whether, in the absence of any cash, a liquidating plan could pass that requirement. In any event, the approximately 60 to 120 days that would pass before plan confirmation is too a long a period of time to wait to determine whether the liquidating plan can be confirmed. The estate cannot afford that costly delay. Appointment of a Chapter 7 trustee can be accomplished more expeditiously and permit the estate to be run efficiently more promptly.

Accordingly, at this point, the Debtor has no remaining business, no employees, no operating assets, no ongoing revenue stream, no viable responsible individual, and at best, only a questionable prospect of confirming a liquidating plan.

**B.** **There is Cause to Convert the Case**

Based on the facts set forth above, there is cause to convert the Debtor's Chapter 11 case

LANDAU GOTTFRIED
& BERGER LLP

on at least two grounds.  Under 11 U.S.C. § 1112(b)(1), on request of a party in interest, after notice and a hearing, and absent unusual circumstances specifically identified by the court, "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter . . . if the movant establishes cause."  Sixteen circumstances constituting 'cause' are listed in 11 U.S.C. § 1112(b)(4).  It is generally accepted that "[t]he enumerated causes are not exhaustive, and 'the court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases.'"  *Pioneer Liquidating Corp. v. United States Trustee (In re Consolidated Pioneer Mortgage Entities)*, 248 B.R. 368, 375 (9th Cir. BAP 2000) (*quoting* H.R. No. 95-595, 95th Cong., 1st Sess. 405-06 (1977), *reprinted in* 1978 U.S.C.C.A.N. 6362).  In the present case, there is 'cause' to act because there is (a) "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," 11 U.S.C. § 1112(b)(4)(A), and (b) no appropriate person available for the role of "responsible individual" in the Chapter 11 case.

First, there is a statutory ground for cause, under § 1112(b)(4)(A), because the Debtor's operating assets have been sold, leaving no possibility for rehabilitation of the Debtor's business, and the ongoing Chapter 11 administrative expenses will cause unnecessary diminution of the estate.  The rationale behind § 1112(b)(4)(A) is that, where there is no hope of achieving Chapter 11's intended purpose of reorganizing the financial affairs of a troubled business or individual, the case should be converted or dismissed to prevent the unnecessary accrual of expense.  *See, e.g., In re Gilliam*, 2005 Bankr. LEXIS 3359 at *20-21 (9th Cir. BAP Aug. 10, 2005) ("With a few exceptions, not present here, the purpose of chapter 11 reorganization is to assist financial distressed business or individuals by providing them with breathing space in which to return to a viable state. . . .  If there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its *raison d'être*.") (*quoting In re Ironsides, Inc.*, 34 B.R. 337, 339 (Bankr. W.D. Ky. 1983)) (internal punctuation and quotation marks omitted); *Lennon v. Grimmett (In re Lennon)*, 2005 Bankr. LEXIS 3367 at *13 (9th Cir. BAP July 20, 2005) ("In order to avoid the costs of chapter 11 in cases in which they are not justified, section 1112(b) was designed to provide the court with a powerful tool to weed out inappropriate chapter

LANDAU GOTTFRIED
& BERGER LLP

11 cases at the earliest possible stage.") (*quoting* 7 COLLIER ON BANKRUPTCY ¶ 1112.04[2] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.)). The standard of § 1112(b)(4)(A) will be met when there is both "continuing loss to or diminution of the estate" and "absence of a reasonable likelihood of rehabilitation." As explained by the Ninth Circuit, "[d]iminution of an estate exists where, for example, the debtor's business has ceased, or the debtor's liabilities outstrip its assets. A debtor lacks a reasonable likelihood of rehabilitation where, for example, it lacks income, lacks operating funds, or lacks employees, capital, or continuing revenue-generating activity." *Bay Area Material Handling, Inc. v. U.S. Trustee (In re Bay Area Material Handling, Inc.)*, 1996 U.S. App. LEXIS 2272 at *4-5 (9th Cir., Jan. 25, 1996) (internal quotation marks and citations omitted). In the present case, all of those criteria are met. The Debtor's operations were transferred to Floramoda on August 5. The Debtor has no remaining employees or continuing revenue-generating activity. Instead, the Debtor's estate simply holds real estate and litigation assets that can be collected at least as efficiently by a Chapter 7 trustee as by the Chapter 11 Debtor. Under the circumstances, there can be no justification for remaining in a Chapter 11. The continuation of the Chapter 11 case will simply result in further diminution of the estate by unnecessary administrative expenses, including (a) the increased cost of professionals in the Chapter 11 (where both the Debtor and the Committee have retained multiple professionals) and (b) the cost of confirming a liquidating plan to distribute any funds that are recovered by the estate.

The absence of any appropriate Debtor representatives to serve as the responsible individual in the Chapter 11 case constitutes a second, non-statutory ground for "cause." As described above, the non-insider employees of the Debtor have been terminated, and many have been hired by Floramoda. Those employees' loyalty (and time) now belongs to Floramoda. The only remaining candidates for the "responsible individual" appear to be the insiders of the Debtor, who cannot serve as appropriate estate fiduciaries due to potential conflicts of interest and lack of incentive to maximize recovery by the estate. On that basis, the Committee expressed to the Debtor its opposition to the designation of Ms. Hollingsworth as the Debtor's responsible individual and will similarly oppose the proposed designation of any other insider of the Debtor.

Also, as stated above, the Committee is concerned by recent actions of the Debtor indicating that the individuals currently in control of the Debtor are not devoting sufficient resources to liquidating the remaining assets of the estate and are not taking into consideration the views of creditors. The Committee believes that the only way that the estate assets can be liquidated appropriately and for the benefit of the creditors is for a trustee to perform the liquidation.

### C. Conversion, Rather than Dismissal or Appointment of a Chapter 11 Trustee, Is in the Best Interest of Creditors and the Estate

The Court should convert the Debtor's Chapter 11 case to Chapter 7, rather than dismissing the case or ordering the appointment of a Chapter 11 trustee, because there are significant assets remaining to be administered, and that administration can be performed more efficiently by a Chapter 7 trustee than by a Chapter 11 trustee. In any case where "cause" has been established, the court must choose between converting a Chapter 11 case to Chapter 7, dismissing the case, or ordering the appointment of a Chapter 11 trustee. *See* 11 U.S.C. § 1112(b)(1); 11 U.S.C. § 1104(a)(3). The court must select the option that is in the "best interests of the creditors and the estate." *Id.* Here, conversion of the case is in the best interest of creditors and the estate. As described above, there are significant real property and litigation assets remaining in the estate, including the PUD Property, the Open Space Property, avoidance actions, and claims and causes of action against the Debtor's insiders. (The Debtor's estate is also entitled to receive the proceeds of pre-closing accounts receivable, although those accounts will be collected by Floramoda.) Because there are assets remaining to be liquidated for the benefit of creditors, the Debtor's case should not be dismissed. That is particularly true because one of the assets, the avoidance actions, would not exist outside of the bankruptcy case. *See, e.g., In re Staff Investment Co.*, 146 B.R. 256, 261 (Bankr. E.D. Cal. 1992) ("The element of the best interest of the estate focuses upon whether the economic value of the estate is greater inside or outside of bankruptcy. . . . As the trustee's powers to recover property are generally greater than would be available outside of bankruptcy, this factor tends to favor conversion where there is not continuing revenue-generating activity."). A Chapter 7 trustee is preferable to a Chapter 11 trustee because there is no business to operate and because a Chapter 7 trustee will be

compensated at the statutory rate rather than at a more expensive hourly rate. Further, the Chapter 7 trustee has statutory authority to distribute assets in accordance with the Bankruptcy Code's priority scheme, whereas a Chapter 11 trustee would have to confirm a liquidating plan (or at least file a motion) to distribute any funds collected. Accordingly, conversion to Chapter 7 is in the best interest of creditors and the estate.

## CONCLUSION

For the reasons set forth above, the Committee respectfully requests that the Court enter an order converting the Debtor's Chapter 11 case to a case under Chapter 7.

Dated: September 1, 2011   LANDAU GOTTFRIED & BERGER LLP

By: /s/ Peter J. Gurfein
Peter J. Gurfein
Counsel for the Official Committee of Unsecured Creditors of Tally One, Inc.