Stephen D. Finestone (125675)
John F. Sullivan (175236)
LAW OFFICES OF STEPHEN D. FINESTONE
456 Montgomery Street, 20th Floor
San Francisco, CA 94104
Telephone: (415) 421-2624
Facsimile:  (415) 398-2820
Email: sfinestone@pobox.com

Counsel for Debtor and Debtor in Possession
Tally One, Inc.
fka Nurserymen's Exchange, Inc.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>TALLY ONE, INC.<br><br>fka NURSERYMEN'S EXCHANGE, INC.<br><br>    Debtor and Debtor in Possession | Case No. 11-31985<br><br>Chapter 11<br><br>**STATUS REPORT REGARDING MOTION FOR ORDER APPROVING THE SALE OF REAL PROPERTY TO DOBBINS PROPERTIES, LLC OR TO THE HIGHEST BIDDER FREE AND CLEAR OF THE LIENS OF WELLS FARGO BANK AND MOTION TO ASSIGN LEASE TO DOBBINS PROPERTIES LLC OR OTHER BUYER**<br><br>**Date:** October 28, 2011<br>**Time:** 10:00 a.m.<br>**Place:** 235 Pine Street, Courtroom 22<br>    San Francisco, CA |

    Pursuant to the Court's request, Tally One, Inc. fka Nurserymen's Exchange, Inc. ("Debtor") files this status report regarding the scheduled hearing on Debtor's motion to sell the PUD Property to Dobbins Properties, LLC ("Dobbins")

**UPDATE ON DEBTOR'S FINANCIAL STATUS:**

    Since the parties were last before the Court, Debtor continued its collection of accounts receivable.  As of the close of the sale of its business and related assets on August 5, 2011, Debtor's accounts receivable balance was approximately $2,822,000.  As of October 18, 2011, Debtor had

STATUS REPORT

1

collected approximately $2,717,000, leaving approximately $105,000. The collections were applied to Wells Fargo's debt, which has now been reduced to approximately $3,750,000. In addition to the loan balance, Wells Fargo has posted letters of credit related to Debtor's potential workers compensation liability. The letters of credit total $845,000.

The Section 503(b)(9) claims in the case are approximately $1 million. The current outstanding professional fees through September are roughly estimated at $550,000-$600,000.

**STATUS OF THE SALE OF THE PUD PROPERTY**

Dobbins indicated to Debtor that it does not intend to proceed with the purchase. Under the signed Purchase and Sale Agreement, Dobbins had until October 28, 2011 to complete its due diligence/feasability analysis. Based on discussions Debtor has had with the broker and with other parties, Dobbins apparently spent its time trying to contract with a third party to either purchase its contract rights or enter into a form of joint venture. Unable to do so, Dobbins advised the Debtor it does not intend to proceed and has requested the return of its deposit from escrow.

With respect to its efforts to sell the PUD Property, Debtor continues to encounter the same problem, namely, in the current economic environment in general and the current condition of the housing market in particular, buyers are not willing to pay considerable sums for the PUD Property without obtaining entitlements to develop it. Parties have differing opinions on the time needed to obtain entitlements, but the range appears to be 18-36 months.

This dilemma has lead Debtor and the Official Committee of Unsecured Creditors (the "Committee") to consider alternatives to a straight sale of the PUD Property.[1] Both Debtor and the Committee are having discussions with other parties on a different form of transaction. In general terms the transaction would involve holding onto the PUD Property (or an interest in it) until such time as the entitlements were obtained. Based on discussions with interested parties, the upside to the estate (and therefore the creditors) of this type of transaction would be far greater than a straight sale of the PUD Property at this stage. The issues then become: (i) Can Debtor, with Committee approval, come to a firm

---

[1] Debtor also retains its Open Space property of approximately 403 acres, but the sale of this property has always been a longer term proposition.

STATUS REPORT

2

agreement with one of these interested parties; (ii) What can or will the contracting party do with respect to the existing Wells Fargo debt and what might Wells Fargo agree to in terms of the restructuring of the debt; and (iii) Can a transaction of this type be completed via a plan of reorganization and what are the obstacles to confirming such a plan.

Debtor anticipates that it and the Committee will have additional conversations with the interested parties and with Wells Fargo prior to the upcoming court date and will provide further details at the hearing.

Dated: October 21, 2011        LAW OFFICES OF STEPHEN D. FINESTONE

/s/ Stephen D. Finestone
Stephen D. Finestone
Attorneys for Debtor and Debtor in Possession