

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case |
| | ) No. 11-31985DM |
| TALLY ONE, INC., | ) |
| | ) |
| Debtor. | ) Chapter 11 |
| _____ | ) |

### MEMORANDUM DECISION REGARDING DISPUTED TRUSTEE ELECTION

The court is faced with a disputed election of a permanent
trustee by creditors. The conduct of the voting creditors and for
whom they voted is not at issue. Rather, the court must decide
whether the conduct of the former counsel for the unsecured
creditors' committee in the solicitation process so violated the
Federal Rules of Bankruptcy Procedure that the election should be
invalidated. While the court concludes that invalidation of the
election is not necessary, it also is concerned about the
appropriateness of future representation of the trustee by that
counsel, given the nature of his involvement in the process.
Although the elected trustee has not yet requested employment of
any professionals, the court puts him on notice that it is not
inclined to authorize the employment of that counsel.

A.  Applicable Law

Section 702 of the Bankruptcy Code permits a non-insider

-1-

creditor holding "an allowable, undisputed, fixed, liquidated, unsecured claim" and not having a materially adverse interest to the interests of other creditors to vote for a candidate for trustee at the section 341 creditors' meeting. Federal Rules of Bankruptcy Procedure 2003 and 2006 govern election procedures; in particular, Rule 2006 regulates the solicitation and voting of proxies in such elections.

Rule 2006(d) flatly prohibits a solicitation of a proxy "by or on behalf of an attorney at law." Rule 2006(b)(2) defines the solicitation of proxies as "any communication, other than one from an attorney to a regular client who owns a claim or from an attorney to the owner of a claim who has requested the attorney to represent the owner, by which a creditor is asked, directly or indirectly, to give a proxy after or in contemplation of the filing of a petition by or against the debtor." The Advisory Committee Note to Rule 2006 sets forth the intent behind this prohibition:

> Creditor control was a basic feature of the Act and is continued, in part, by the Code. Creditor democracy is perverted and the congressional objective frustrated, however, if control of administration falls into the hands of persons whose principal interest is not in what the estate can be made to yield to the unsecured creditors but in what it can yield to those involved in its administration or in other ulterior objectives. . . . The purpose of the rule is to protect creditors against loss of control of administration of their debtors' estates to holders of proxies having interests that differ from those of the creditors.
>
> ***
>
> *Solicitation by an attorney of a proxy from a creditor who was not a client prior to the solicitation is objectionable not only as unethical conduct* as recognized by such cases as In the Matter of Darland Company, 184 F. Supp. 760 (S.D. Iowa 1960), but also and more importantly because *the practice carries a substantial risk that administration will fall into the*

-2-

*hands of those whose interest is in obtaining fees from the estate rather than securing dividends for creditors.* Advisory Committee Notes to Rule 2006 (emphasis added). <u>See also</u> <u>In re Eddie Haggar Ltd., Inc.</u>, 190 B.R. 281, 284 ("the regulations discourage the election of a trustee by creditor's attorneys").

Rule 2006(e)(5) requires an attorney who solicits or forwards proxies to submit "at any time before voting commences" or at "any other time as the court may direct" a verified statement that no consideration has been paid or promised the solicitor or forwarder. The verified statement must disclose whether any agreement exists between the solicitor or forwarder and any other entity for, inter alia, the employment of any person as an attorney for the estate. The Advisory Committee emphasizes that "provisions requiring these statements implement the policy of the Code expressed in § 504 as well as the policy of this rule to deter the acquisition of proxies for the purpose of obtaining a share in the outlays for administration."

Subsection (f) governs enforcement of Rule 2006. The court may determine whether "there has been a failure to comply" with Rule 2006 or whether there has been "any other impropriety in connection with the solicitation or voting of a proxy." Upon a finding of noncompliance with the rule or of impropriety in solicitation, the court may reject a proxy, vacate an order entered in consequence of the voting of a proxy which should have been rejected, "or take any other appropriate action."

B.   <u>The Facts</u>[1]

---

[1]The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

-3-

This case began in chapter 11 on May 23, 2011. The official creditors committee employed Landau Gottfried and Berger LLP ("Landau") as its counsel; Peter J. Gurfein, a member of Landau, acted as lead counsel. The case was converted to chapter 7 on November 1, 2011, and Janina M. Hoskins was designated as interim chapter 7 trustee. On October 28, 2011, Mr. Gurfein informed Ms. Minnie Loo, an attorney with the United States Trustee ("UST"), that members of the committee desired an election of the Chapter 7 trustee. Ms. Loo asked that such requests be submitted to her promptly, in writing. That same day Mr. Gurfein prepared letters from creditors and addressed to Ms. Loo requesting an election of a chapter 7 trustee and provided those letters to members of the committee. Shortly thereafter nineteen such letters were signed by creditors and returned to Landau rather than to Ms. Loo. As these letters were not themselves proxy solicitations, Rule 2006 did not apply, but they do reflect lines of communication between individual creditors and Landau.

Then on November 17, 2011, those communications continued when Mr. Gurfein sent a letter on Landau letterhead to various creditors forwarding a proxy form for an election of a chapter 7 trustee. The letter stated that two former members of the creditors' committee, Steve Mayo and William Epstein, had volunteered to cast votes for those unable to attend the creditors' meeting. A form for designating Messrs. Mayo and Epstein as authorized agents was enclosed; the letter set forth detailed instructions for filling out the proxy. The recipients were asked to return the authorization to Landau's office by December 2, 2011. According to the letter, Landau agreed to

-4-

circulate it "as an accommodation to certain creditors of the former Creditors Committee. **We do not represent you or any other creditor."** (Emphasis in original).

On December 7, 2011, the UST convened the section 341 meeting. Mr. Epstein and Mr. Mayo, acting as president of Shippers Choice Transportation Services, Inc., produced sufficient votes (their own and those that they held as proxies) to request an election of a chapter 7 trustee pursuant to section 702. They nominated Kyle Everett as trustee, and all votes were cast for Mr. Everett. No creditors or others present disputed or objected to the vote. Neither did Ms. Hoskins.

On January 30, 2012, the UST filed a Report of Disputed Trustee Election under Rule 2003(d), raising the issue of whether a failure of Landau and Mr. Gurfein to comply with the proxy solicitation requirements of Rule 2006(e)(5) invalidated the election. The UST noted in its report that Mr. Gurfein had not a filed the verified statement required by Rule 2006(e)(5). The UST took no position on what the court should do about the dispute.

Rule 2003(d)(2) directs that upon report of a disputed election, the interim trustee is to continue to serve until the court resolves the dispute; the interim trustee becomes the trustee if no party moves for resolution of the dispute within fourteen days.

On February 3, without waiting for such a motion, the court issued an order directing Mr. Gurfein to comply with Rule 2006(e)(5) or otherwise demonstrate why he was not required to do so. The court also invited other parties to respond to Mr. Gurfein's submission. Mr. Gurfein filed his response and verified

-5-

statement on February 10, 2012; the UST and the debtor filed
responses on February 17, 2012; other declarations have been filed
as well, as noted below. The court concludes, therefore, that
there has been substantial compliance with the procedures called
for in Rule 2003(d)(2) and that it should resolve the dispute.

Mr. Gurfein's statement reflects that he has not received,
been promised, or entered into any agreement for compensation or
employment in connection with the proxies. It does disclose that
he had "discussed with Mr. Everett his retention of [Landau] as
counsel to the Trustee in the Chapter 7 case." In reply, the UST
filed a "comment" suggesting that Mr. Gurfein's disclosure was
incomplete. In particular, the UST provided a December 8 e-mail
to the UST's office from Ms. Hoskins stating:

> Good morning: As we discussed, I reviewed my notes this
> morning. I spoke to Mr. Gerfein [sic] on the afternoon of
> October 31st regarding the general status of the case.
> During the telephone discussion he was very upfront and
> advised me that his client wanted their own Trustee in the
> case and would elect Kyle Everett with DSI.
>
> He also advised me that if I was interested in putting my
> name with the creditors so that they would have other options
> to consider as Trustee, I needed to be aware that Kyle was
> going to retain his firm as counsel for the Chapter 7 Trustee
> and that he would want me (my written notes say "expect") to
> retain his firm as well. I told him that I normally use my
> own professionals.
>
> That afternoon, my telephone records indicate that I called
> Julie [Glosson, an attorney with the UST] and she returned my
> call around 3:00 p.m. I did not sent [sic] an email to Julie
> regarding my two issues- 1) could counsel for the Committee
> represent the Chapter 7 Trustee and 2) the agreement between
> counsel for the Committee and the proposed Trustee- Everett
> regarding retention.
>
> [Omitted sentence.]
>
> I certainly took Mr. Gerfein's [sic] comments to mean that he
> expected any Chapter 7 Trustee appointed to the case, and
> presented to the Committee/his clients, would retain his

-6-

firm. I did not submit any information or contact any unsecured creditors or parties in interest in the case in order to be considered as Chapter 7 Trustee.

Ms. Hoskins filed her own declaration confirming the contents of this e-mail. In response to Mr. Gurfein's statement and in light of Ms. Hoskins' e-mail, Debtor's counsel filed a reply contending that Mr. Gurfein acted as a solicitor in violation of Rule 2006(d) and that the election should thus be overturned.

In response to the UST's comment, both Mr. Gurfein and Mr. Everett filed declarations stating that no agreement existed between them as to the retention of Landau as counsel for the trustee. Mr. Everett's declaration reflects that Mr. Gurfein contacted him in August 2011 -- prior to the filing of a motion to convert -- to ascertain whether Mr. Everett would be interested in serving as trustee. Mr. Gurfein offered to serve as counsel if Mr. Everett were elected. Mr. Everett made no commitment to hire Mr. Gurfein and his firm, although "I did say that I would consider his retention in light of his experience and extensive knowledge of this case."

C. <u>Analysis</u>

The facts of this case are similar to those of <u>Eddie Haggar</u>. There, the law firm which had represented the chapter 11 unsecured creditors' committee "represented[ed] and assist[ed] a creditor in its effort to solicit proxies." The court found that this "limited role" did not constitute solicitation that was prohibited by Rule 2006(d). <u>Eddie Haggar</u>, 190 B.R. at 284-85. The <u>Eddie Haggar</u> court did not provide the details of this assistance, but did state that the firm "represented" the creditor. In contrast,

-7-

1  neither Landau nor Mr. Gurfein "represented" Mr. Mayo's company,
2  Mr. Epstein or any other creditor.

3      Here, Mr. Gurfein sent a letter requesting that proxies be
4  returned to Landau by a certain date; he also stated that Landau
5  not represent any creditor.  That letter is a "communication . . .
6  by which a creditor is asked, directly or indirectly, to give a
7  proxy[.]."  As Landau specifically disclaimed that it was
8  representing any creditor, it did not send the letter as attorney
9  for a client who owned a claim.  As such, Mr. Gurfein and Landau
10 engaged in a solicitation prohibited by Rule 2006(d).  But whether
11 a solicitor or a forwarder, the duties and the consequences are
12 much the same.  At a minimum, Mr. Gurfein was required to file a
13 Rule 2016(e) verified statement.  He did not do so until ordered
14 by the court.  That statement, which should have been filed prior
15 to the vote, should have informed the creditors that Landau
16 expected to be employed as Mr. Everett's counsel if creditors
17 successfully voted to replace Ms. Hoskins with Mr. Everett.

18     Notwithstanding Mr. Gurfein's noncompliance with Rule 2006,
19 the court will not invalidate the election, as the votes
20 themselves were not tainted by Mr. Gurfein's failure to disclose.
21 The creditors have been active in the case, and the court does not
22 want to disregard their votes and participation.  "Bankruptcy Rule
23 2006 was not intended to restrict the scope of the [c]ourt's
24 discretion in determining proxy disputes.  The [c]ourt's paramount
25 consideration is the welfare of the estate."  Id.  Invalidating
26 their votes and participation in the process does not advance the
27 welfare of the estate.

28     The court, however, is concerned that Mr. Gurfein's

-8-

participation in the proxy process runs afoul of the intent behind
Rule 2006(d): preventing the solicitation of trustee votes by
attorneys who have a vested interest in being retained as counsel.
While the court finds that there was no "agreement" in the
contractual sense for Mr. Everett to hire Landau, there certainly
appears to be an implied understanding to that effect. This is
demonstrated by the fact that Mr. Gurfein chose to inform Ms.
Hoskins of his communications with Mr. Everett about representing
him and the chapter 7 estate. Whether the comment was gratuitous
or calculated to intimidate Ms. Hoskins, it demonstrates more of
an understanding with Mr. Everett than paragraph 18 of Mr.
Gurfein's verified statement reflects and should have been fully
disclosed by Mr. Gurfein prior to the election.

The Advisory Committee Notes to Rule 2006 stress that the
courts are to exercise their discretion in arriving at results
consistent with the policy objectives of the Bankruptcy Code and
the concomitant rules. To that end, the court must balance two
strong but sometimes competing policies: the freedom of parties
(here the trustee) to select counsel of their choice against the
transparency and bona fides of the electoral process in bankruptcy
trustee elections. In this case the latter can be protected by
limiting the former. To that end, the court will permit the votes
to stand and confirm Mr. Everett as the chapter 7 trustee, but is
not inclined to approve any employment of Landau as counsel for
Mr. Everett or the estate (a matter not presently before the
court, but likely to arise if nothing is said). The court does
not take this position lightly. It has high regard for Mr.
Gurfein and for Landau, and it by no means suggests that they

-9-

acted other than in good faith.  Still, the need for things to look right as well as be right prevails here.  The integrity of the bankruptcy system demands as much.

The court is concurrently entering an order confirming Mr. Everett's selection as Chapter 7 trustee for the reasons set forth in this Memorandum Decision.

* * * END OF MEMORANDUM DECISION * * *

-10-

```
1

2

3                          COURT SERVICE LIST

4    Tally One, Inc.
     C/o Jack Pearlstein
5    2651 North Cabrillo Highway
     Half Moon Bay, CA 94019
6
     Maria Guadalupe Diaz de lemus
7    1131 Main St., #138
     Half Moon Bay, CA 94019-2194
8
     William Epstein
9    41 Nace Ave.
     Piedmont, CA 94611-4325
10
     Daniel Kapler
11   227 Loma Verde Dr.
     San Lorenzo, CA 94580-1785
12
     Timothy Oldham
13   P.O. Box 370864
     Montara, CA 94037-0864
14
     Adan Rivera
15   P.O. Box 2387
     Richmond, CA 94802
16
     Shippers Choice Transportation Services, Inc.
17   385 East Penny Rd.
     Wenatchee, WA 98801
18
     W.F. Griffin, Inc.
19   C/o Ronald Caird
     P.O. Box 6354
20   Santa Barbara, CA 93160-6354

21   Arthur Weil
     671 Oak Grove Ave., #K
22   Menlo Park, CA 94025

23   Michael St. James, Esq.
     155 Montgomery St., Ste. 1004
24   San Francisco, CA 94104

25   A. Kyle Everett
     c/o DSI San Francisco
26   235 Pine St., Ste 1150
     San Francisco, CA 94104-2750
27

28
```

-11-